(No. 20747.—
KATHARINE DEXTER McCORMICK, Appellee, *vs.* ANITA McCORMICK BLAINE *et al.* Appellants.

*Opinion filed October 23, 1931.*

TENNEY, HARDING, SHERMAN & ROGERS, MILLER, GOR-
HAM & WALES, and CASSELS, POTTER & BENTLEY, (HORACE
KENT TENNEY, LOGAN HAY, AMOS C. MILLER, EDWIN H.
CASSELS, BARRY GILBERT, and GEORGE C. BUNGE, of coun-
sel,) for appellants.

BAKER, HOSTETLER, SIDLO & PATTERSON, and WINSTON,
STRAWN & SHAW, (NEWTON D. BAKER, SILAS H. STRAWN,
PAUL PATTERSON, HOWARD F. BURNS, and JOHN C. SLADE,
of counsel,) for appellee.·

Mr. CHIEF JUSTICE STONE delivered the opinion of the
court:

This cause is here on certificate of importance and ap-
peal allowed by the Appellate Court for the First District.
It arises on a petition filed in the probate court of Cook
county to declare Stanley McCormick to be an incompetent
person and to appoint a conservator for his person and
property.

On October 4, 1928, appellants Cyrus H. McCormick
and Harold F. McCormick, brothers of Stanley McCor-
mick, filed a petition in the probate court of Cook county

alleging that Stanley McCormick was an insane person and incompetent to manage and control his estate and that he possessed real property in Cook county. The petition prayed that a hearing be had as to the competency of Stanley McCormick, and if found to be incompetent that conservators be appointed for his property in this State. Summons was issued and returned not found. Constructive service was had by publication and mailing of notice to Stanley McCormick at Santa Barbara, California. Two days later the appellee, Katharine Dexter McCormick, wife of Stanley McCormick, filed in the same court a similar petition, praying that she be appointed conservator of both the person and estate of Stanley McCormick. To this latter petition the brothers of Stanley McCormick filed objections, in which they were joined by their sister, Anita McCormick Blaine, also appellant here. These objections were directed against the appointment of a conservator for the person of Stanley McCormick. The two petitions were heard together. A jury was impaneled, which found Stanley McCormick to be incompetent and found that he had real estate and personal property in Cook county. The probate court on that verdict granted the prayer of both petitions in so far as they sought the appointment of conservators for the property of Stanley McCormick in Illinois, and appointed the Continental Bank and Trust Company of Chicago, Illinois Merchants Trust Company of Chicago, Katharine Dexter McCormick, petitioner in the second petition, and Harold F. McCormick, petitioner in the one first filed, as such conservators. The appointment of a conservator for the person of Stanley McCormick was denied on the ground of want of jurisdiction over his person. From this order Katharine Dexter McCormick appealed to the circuit court. That court sustained a motion to dismiss the petition of Katharine Dexter McCormick as to this latter order on the ground of want of jurisdiction over the person of Stanley McCormick. On appeal to the Appellate Court the

judgment of the circuit court was reversed and the cause remanded for further proceedings, and, as we have noted, the cause is here on certificate of importance.

The question involved in the case is whether the probate court of Cook county had jurisdiction to appoint a conservator of the person of Stanley McCormick, who, it is conceded, has lived in Santa Barbara, California, and has not left that State since 1908. No question of fact is involved. Stanley McCormick, now about fifty-five years of age, was born in Chicago, where he resided until his marriage to the appellee, Katharine Dexter, in 1904. In 1906, while visiting in Massachusetts with his wife, he became mentally deranged. He was kept in a hospital in Massachusetts until 1908, when he was removed to California. It appears that in 1909, conservators, or guardians of his person as they are there styled, were appointed by a California court. He has since lived on property belonging to him in Santa Barbara, California.

The question of the jurisdiction of the courts of this State to appoint a conservator of the person of an alleged incompetent citizen of the State residing outside its borders is one on which this court has not directly passed. The probate and circuit courts held that a proceeding to appoint a conservator for the person is one *in personam,* and that jurisdiction may not be taken by the courts of this State, by constructive service, to enter a personal judgment against one not within the State though he be domiciled in this State. The Appellate Court held that the proceedings were *in rem,* and that whether such be so or not, a State has jurisdiction, through constructive service, to enter a judgment of the character here involved against its citizens domiciled in this State but having a residence outside the State. The contentions of the appellants here are, that a proceeding arising on a petition to declare one an incompetent and appoint a conservator for his person is, so far as jurisdiction is concerned, a proceeding *in personam;* that the stat-

utes of this State have not authorized personal judgments based on constructive service by publication and mailing of notice, and that if such construction were to be placed upon the statutes they would be invalid as contravening the due process clauses of the State and Federal constitutions. Appellants also argue that the California court having taken jurisdiction of the person of Stanley McCormick by appointing guardians for him there, the principles of full faith and credit require that their judgment be recognized by the courts of this State. Appellee argues that the action is one *in rem,* and that, whether this is so or not, the Illinois courts have jurisdiction of the person of Stanley McCormick for the reason that, though absent from the State, he is a domiciliary of Illinois, and jurisdiction to enter personal judgment against an absent domiciliary exists in the State and is authorized by the statutes of this State.

The first question here presented is whether this is a proceeding *in personam* or *in rem.* A judgment *in rem* may be briefly defined as one founded on a proceeding instituted not primarily against the person but against or upon some thing or subject matter the status or condition of which is to be determined. Such judgment is one affecting the status of the *res.* A proceeding *in personam* is a proceeding against the person. It involves his personal rights and may involve his right to specific property or the exercise of the ownership of such property, but it is based on jurisdiction of his person. (*Woodruff* v. *Taylor,* 20 Vt. 65; *Windsor* v. *McVeigh,* 93 U. S. 274, 23 L. ed. 914; *Austin* v. *Royal League,* 316 Ill. 188.) The cases in this country considering the question whether a proceeding to declare one to be incompetent and appoint a conservator for his person is an action *in personam* or *in rem* are but few. In *Raher* v. *Raher,* 150 Iowa, 511, 129 N. W. 494, *Grinbaum* v. *Superior Court,* 221 Pac. (Cal.) 651, and *In re Wilson,* 9 Del. Ch. 332, 82 Atl. 695, a proceeding to declare one to be of unsound mind and appoint a

guardian for his person was held in each case to be *in personam*. While the Iowa and California decisions were by divided courts on the question of jurisdiction there seemed to be no disagreement in the holding here referred to. In *Chase* v. *Hathaway,* 14 Mass. 221, while the fundamental distinction between actions *in personam* and *in rem* is not noted the observations of the court are pertinent to that distinction. The appeal arose on a lunacy proceeding. No notice was given to the alleged incompetent, and the court there said: "It is a fundamental principle of justice essential to every free government, that every citizen shall be maintained in the enjoyment of his liberty and property unless he has forfeited them by the standing laws of the community and has had opportunity to answer such charges as, according to those laws, will justify a forfeiture or suspension of them. And whenever the legislature has provided that on account of crime or misfortune the public safety or convenience demands a suspension of these essential rights of the individual and has provided a judicial process by which the fact shall be ascertained, it is to be understood as required that the tribunal to which is committed the duty of inquiring and determining shall give opportunity to the subject to be heard in support of his innocence or his capacity. * * * Indeed, it would seem strange that the whole estate of a citizen might be taken from him and committed to others and his personal liberty be restrained upon an *ex parte* proceeding, without any notice of the pendency of a complaint, upon a suggestion of lunacy or other defect of understanding, while the depriving him of the minutest portion of that property or the slightest detention of his person would be illegal upon a charge of crime or of a breach of a civil contract unless all the formalities of a trial were secured to him by the forms of process and the regular execution of it."

In *Supreme Council of R. A.* v. *Nicholson,* 104 Md. 472, 65 Atl. 320, the Maryland court considered the ques-

tion whether an alleged incompetent is entitled to notice and an opportunity to appear and resist the allegations of a petition filed against her. The statutes of Maryland did not require that notice be given. The court, in holding that she was entitled to notice and an opportunity to appear and defend against the petition, made these pertinent comments: "It is difficult to over-estimate the gravity and seriousness of the consequences to the citizen which necessarily flow from an adjudication declaring him to be *non compos mentis*. He is divested of his property and may be restrained of his liberty and incarcerated in an insane asylum. To assert that this can be done, under the general principles of American law, without notice or opportunity to be heard is shocking to one's sense of justice and humanity. No such general rule of procedure can be recognized by the American courts. On the contrary, the well-considered cases where the question has arisen have been uniform in holding that the person proceeded against must have reasonable notice of the time and place of taking the inquisition and an opportunity to attend and make his defense. This is the general rule, and can only be departed from in such exceptional cases as shall be hereafter mentioned. In 16 Am. & Eng. Ency. of Law, p. 567, it is stated that 'where, as in England, a traverse of the inquisition is deemed a matter of right, it seems that a failure to serve notice on the alleged lunatic does not invalidate the proceeding. But in the United States it is generally held that a person against whom a commission of lunacy is issued is entitled to reasonable notice of the time and place of the inquisition and has a right to be present and contest the proceeding.' "

In *Matter of Daniel Vanauken*, 10 N. J. Eq. 190, in considering the question of notice to the alleged incompetent and a right in him to appear and defend against the petition, the court said: "The alleged lunatic has a right to be present at the examination of the commission and make his defense by himself or counsel and to examine the wit-

nesses. The effect of the finding against him is to deprive him of the control of his property and of his personal liberty. Such consequences cannot follow except upon the verdict of the jury, and no such verdict should be permitted to pass against any man without affording him an opportunity of defending himself except in extreme cases, when such notice would be nugatory. In cases of confirmed and dangerous madness it may be dispensed with, but then only by the express order of the court."

In *Holman* v. *Holman*, 80 Me. 139, 13 Atl. 576, where the alleged incompetent did not have notice, the court, in setting aside the judgment against him, said: "It is the opinion of the court that the defendant should have had notice of the inquisition by the selectmen. It is true that there is no express statute provision requiring such notice, but it is a well settled rule of common law that when an adjudication is to be made which would seriously affect the rights of a person he should be notified and have an opportunity to be heard."

In Alexander's Chancery Practice, 225, the author says of the alleged lunatic that he "has a right to be present before the jury and may take part in the examinations before them."

In *Eddy* v. *People*, 15 Ill. 386, this court considered the question of notice in an insanity proceeding. The statute then in force in this State was silent on the subject of notice and the question was whether a proceeding could be had without notice to the supposed lunatic. It was there pointed out that "if he be in fact a lunatic the notice would be undoubtedly useless. But that is the very question to be tried, and until a regular trial is had or inquest made the presumption is in favor of his sanity. The consequences resulting from the determination are of the most momentous character to the lunatic, both personally and pecuniarily, and so long as it is possible that a sane person might upon an *ex parte* examination be found to be insane, every principle

of justice and right requires that he should have notice and be allowed to make manifest his sanity and to refute or explain the evidence tending to prove the reverse." This court also there said: "The idea is too monstrous to be tolerated for a moment that the legislature ever intended to establish a rule by which secret proceedings might be instituted against any member of the community, by any party who might be interested to shut him up in a mad-house, by which he might be divested of his property and his liberty without an opportunity of a struggle on his part. Should such a principle be sustained the most sane man in the State is liable to be surprised at any moment by finding himself bereft of his property and on his way to a lunatic asylum. * * * If the party be actually lunatic the notice can do no harm, but if he be sane it is of the most momentous importance to him, and at any rate it must be his legal right."

While it is true, as pointed out by counsel for appellee, the opinions in the *Eddy* and *Hathaway cases* disclose that no notice was given, and, as herein noted, no notice was afforded in the other cases cited, yet it seems apparent that the courts in these cases considered an action on a petition to have one declared insane as one against him and affecting him personally. The reasoning supporting these decisions is to the effect that the issue of incompetency was, because of the effect of its determination on the alleged incompetent, a personal issue concerning him.

Counsel for appellee argue, however, that a proceeding for the appointment of a conservator of the person for an incompetent is a proceeding concerning the status of such person; that proceedings affecting status are proceedings *in rem,* and that since in actions *in rem* personal service is not necessary upon a party domiciled in the State in which the proceeding is brought, but absent therefrom, it was not necessary in this case. Many cases have been cited by counsel for appellee which characterize the appointment of a

guardian or conservator as analogous to or in the nature of a proceeding *in rem* in that they are conclusive as to all the world. Of such is *Leonard* v. *Leonard,* 14 Pick. (Mass.) 280, where the action was on a note which defendant owed to plaintiff and to whom he paid the amount after plaintiff had been declared incompetent and a guardian appointed for him. It was held that the appointment of a guardian was in the nature of a proceeding *in rem* in the sense that it was conclusive as against all the world and therefore payment to the incompetent was not a defense against judgment on the note. The question here uppermost—that is, whether, as affects jurisdiction of the person of the alleged incompetent, the proceeding to have him so declared was a proceeding *in personam* or *in rem*—was not there considered, but, for the very clear reason that once having been declared to be an incompetent it is necessary to protect such incompetent, it was held that the judgment of incompetency and appointment of a guardian for him is binding on all the world. In *Leggate* v. *Clark,* 111 Mass. 308, the question involved was whether proof of a judgment finding· incompetent the husband of a grantee in a deed was *prima facie* evidence or conclusive of his insanity at the time the deed was executed. Reference was there made to the statement in *Leonard* v. *Leonard, supra,* that the proceedings to appoint a guardian of an insane person "are in the nature of proceedings *in rem.*" So, also, *Shroyer* v. *Richmond,* 16 Ohio St. 455. In *Banker* v. *Banker,* 63 N. Y. 410, and *Wadsworth* v. *Sharpsteen,* 8 id. 388, the appointment of a conservator was held to be analogous to proceedings *in rem,* to which no one can strictly be said to be a stranger.

The appointment of a conservator for an insane person is referred to in these cases as analogous to a proceeding *in rem* in the sense that it is binding upon all the world. In none of the cases cited by appellee is the direct question of jurisdiction of the court to hear the insanity proceeding

considered. In so far as they disclose the character of service had on the one found incompetent that service was personal. The status referred to in this class of proceedings as *in rem* is generally that which has to do with the relation of one person to another, as in divorce, probate of wills, adoption of minors, and the like. It must be borne in mind that so far as questions of jurisdiction are concerned a difference exists in proceedings dealing with a status once established and proceedings to establish such status.

Counsel for appellee cite *VanMatre* v. *Sankey*, 148 Ill. 536, in support of their contention that the proceeding arising on the petition to have Stanley McCormick declared incompetent was a proceeding *in rem*. That case arose on a bill for partition of real estate situated in Illinois. Caroline Sankey, who was made defendant, claimed title in fee to the property as the adopted daughter of Samuel Sankey by virtue of a decree of adoption entered in a court of Pennsylvania. The question in the case was the validity of those adoption proceedings. She was a child nine years of age at the time of the adoption. Her parents, who had lived in Pennsylvania, were dead and a guardian had been appointed for her. Samuel Sankey, an uncle, petitioned the Pennsylvania court to adopt Caroline Sankey. Her guardian was notified and an order of adoption was entered. After the death of Samuel Sankey his heirs-at-law petitioned the Pennsylvania court to set aside the order of adoption. This petition was denied, and on appeal to the Supreme Court of that State the denial was affirmed. (*Appeal of Wolf*, 10 Sad. (Pa.) 139, 13 Atl. 760.) In the proceedings in this State the validity of the adoption by the Pennsylvania court was again attacked. The ground of such attack material here was that the child adopted was in Illinois at the time of the adoption and out of the jurisdiction of the Pennsylvania court, and it was not shown that there was notice to her of the proposed proceedings. It was pointed out by this court that the statute of Penn-

sylvania did not require that the child be personally present in court or that it be notified of the proceedings; that such notice to it would in nowise add to or detract from the power given to the court or the duty imposed by law upon it to determine the question of adoption in the interest of the child; that the child was domiciled in Pennsylvania, and under the doctrine of *parens patriæ* the Pennsylvania court had the power and duty to guard its interests. It was then said: "The proceeding in this case was in the nature of a proceeding *in rem*, the purpose being to change the status of the child in her relation to said Samuel Sankey." This court then, citing *Ross* v. *Ross*, 129 Mass. 243, held it to be a general principle that the status or condition of a person, the relation in which he stands to another person and by which he is qualified or made capable to take certain rights in that other person's property, is governed by the law of his docimile and is to be recognized and upheld by other States in so far as consistent with their own laws and policies.

An important distinction must be borne in mind between proceedings to adopt children and those to determine incompetency. In the former the minority of the child, and hence its incompetency, is conceded and forms the basis of the jurisdiction of the court of its domicile, under the doctrine of *parens patriæ*, to deal with such conceded status, while in a proceeding to have one declared incompetent the jurisdiction of the court arises on the petition seeking a determination of that matter. The condition or status of the alleged incompetent is not conceded but is the main issue to be tried in the case. It is tried with presumption, obtaining universally, that the one proceeded against is sane. In this it is not unlike a criminal case. A judgment of outlawry entered on a verdict of a jury finding a defendant guilty of a crime has been treated as a judgment *in rem*, (*In re Gottsfeld*, 91 Atl. (Pa.) 494), but no one will contend that a proceeding to determine the guilt of one charged

with crime is not an action *in personam*. While a judgment appointing a conservator, entered after a finding of a jury that a person is incompetent, is, as the cases hold, in the nature of a proceeding *in rem,* in that it is binding on all the world, it by no means follows that a petition to inquire into the mental condition of such person which seeks the custody of such person is *in rem* in such sense as to preclude the necessity of bringing such person properly before the court that he may defend against the judgment most vitally affecting him personally. In other words, the petition which gives the court jurisdiction to hear the issue is one which brings before the court the personal rights of such individual to his liberty and the control of his property. His status of being an incompetent does not arise until that issue has been tried and a verdict of the jury entered finding him incompetent. It seems incongruous to say that courts may secure jurisdiction of a person, under a petition to determine whether he is incompetent, by assuming a status of incompetency, which can be determined only by hearing on the petition and overcoming the presumption, everywhere recognized, that such person is sane. It is "the finding of the jury" that such person is incompetent that creates the status of incompetency, and while an order entered on such verdict appointing a conservator of his person may be said to be in the nature of a proceeding *in rem,* yet such order depends on the determination of the question raised by the petition to have him declared incompetent, which is purely personal to him. Such person cannot be presumed incompetent for purposes of jurisdiction. Section 1, chapter 86, of the Revised Statutes, relating to lunacy, which gives jurisdiction to the court, bases that jurisdiction on a petition filed by someone interested to determine the issue of sanity. To presume such person insane in order to establish jurisdiction would be proving the issue by assuming its determination. In the *Sankey case* this court considered the proceeding as one "in the nature of a proceeding *in rem,*

the purpose being to change the status of the child [admittedly a minor] in her relation to said Samuel Sankey." It is a general rule that the protecting arm of the State, under the doctrine of *parens patriæ,* guards its incompetents, but it is a far cry from that principle to a holding that a petition having been filed alleging insanity, the court will assume incompetency in order that the protecting arm of the State might be thrown about the alleged incompetent. If the court cannot assume incompetency for the purpose of jurisdiction—and, of course, it cannot—then both such jurisdiction and the application of the doctrine of *parens patriæ* must await the process by which jurisdiction of the person of the alleged incompetent is obtained. No case cited in the briefs, or which we have been able to find, holds a contrary view.

It is conceded—as, indeed, it must be—that the State has jurisdiction to appoint a conservator of the property of a person domiciled in such State who is absent from the State but who has property within that State. This is on the ground that the State has jurisdiction of the property within its borders, and while it may be said that the judgment of the court affecting such property may likewise affect its absent owner, this is incidental to the State's jurisdiction over the property. As was said in *Bickerdike* v. *Allen,* 157 Ill. 95: "The jurisdiction of the court to determine the obligations of the defendant constructively notified is incidental to its jurisdiction over the property. The judgment has no effect beyond the property reached or affected in that suit." The same is true in cases of divorce where the complainant is a resident of this State, and constructive service, only, is had on the defendant who resides outside the State. Only that rule which lies in sound reason and an approved sense of justice can be said to be good law. Refinement of reasoning from a theoretical premise which results in injustice indicates most strongly the necessity for shifting the premise. In this class of

cases we are convinced that a proceeding to determine mental incompetency is one *in personam.*

This brings us to the second question in the case—that is, the proceeding on the petition to find Stanley McCormick incompetent and appoint a conservator of his person being *in personam,* may the State nevertheless take jurisdiction of him through constructive service? It is stated by counsel on both sides that he has for more than twenty years lived in California under the control of a guardian of his person appointed in that State and that it is expected he shall remain there, and while it is conceded that he, an insane person, may not choose his domicile and therefore may not of his own volition establish a domicile in California, the effect of a determination by his conservator that he shall remain in California, if any, on his domicile is not argued but for the purpose of this case it is conceded by appellants that his domicile is in Illinois. It is also conceded that the court has jurisdiction of his property in this State and the appointment of conservators for it. In this opinion the term "citizen" is used as meaning a "domiciliary," though these terms are not in all respects synonymous.

Able briefs are presented to the point that the State may exercise jurisdiction over the person of its citizens in proceedings *in personam* though such citizens be outside the borders of the State. It is conceded, as it must be, that though such power exists in the State it can be exercised only through statutes of the State granting power to its courts to take jurisdiction of its absent citizens. The determination of this question therefore depends upon, first, the construction of the statutes of this State, and second, whether such statutes, if they authorize the courts to take personal jurisdiction of absent citizens of the State, contravene the due process clauses of the State and Federal constitutions. It is conceded, as held in *Pennoyer* v. *Neff,* 95 U. S. 714, and other cases, that a State may not take jurisdiction of the citizens of another State not served within

the borders of the first State. Counsel for appellants contend that the statutes of this State do not authorize the courts to take jurisdiction of the persons of citizens of this State who are without its borders.

Section 2 of chapter 86 of the Revised Statutes, known as the Lunacy act, provides for service of summons on the person against whom the petition is filed "in the same manner by summons or otherwise as service is had in chancery," with the exception that in cases of personal service the summons shall be served at least three days before the return day instead of ten days, as required by the Chancery act. Sections 11, 12 and 14 of chapter 22 of the Revised Statutes, known as the Chancery act, direct how service may be made in chancery. By section 11 it is provided that service of summons shall be made by delivering a copy thereof to the defendant or leaving such copy at his usual place of abode with some person of the family of the age of ten years or upwards and informing such person of its contents. By section 12 it is provided that where the complainant or his attorney shall file in the office of the clerk of the court in which his suit is pending an affidavit showing that the defendant resides or has gone out of the State or on due inquiry cannot be found or is concealed within the State so that process cannot be served upon him, and stating in such affidavit the place of residence of the defendant if known or that upon diligent inquiry his place of residence cannot be ascertained, the clerk shall cause publication to be made as in that section provided, and shall, within ten days of the first publication, send a copy of the notice, addressed to the defendant whose place of residence is stated in the affidavit. Section 14 provides for delivering to the defendant residing outside the State a notice of the suit, together with a copy of the bill.

First, then, the question is whether, under proper construction of the Chancery act, constructive notice provided

by it may be made the basis of a personal judgment. The act provides for the service of summons on the person or a substituted service of summons at his place of abode on some member of his household of the age of ten years or upwards, or for constructive service by publication and mailing and by service of notice and a copy of the bill. The effect of constructive notice by publication, under our statute, has been frequently considered by this court, and it has been uniformly held that a decree or order rendered against a party who is beyond the limits of the State, upon constructive notice by publication, under our statute does not bind the party personally. (*Austin* v. *Royal League, supra; Mosier* v. *Osborn,* 284 Ill. 141; *Bickerdike* v. *Allen, supra; Cloyd* v. *Trotter,* 118 Ill. 391; *Harris* v. *Pullman,* 84 id. 20.) It has also been many times held by this court that the return of the officer who has made personal service of summons on a defendant or by leaving a copy at his usual place of abode, as provided by section 11 of the Chancery act, is alone the basis of jurisdiction of the court, and evidence cannot be received to prove or aid such jurisdiction. (*Werner* v. *Shons Co.* 341 Ill. 478; *Illinois Central Railroad Co.* v. *People,* 189 id. 119; *Cassell* v. *Joseph,* 184 id. 378; *Hemmer* v. *Wolfer,* 124 id. 435; *Clark* v. *Thompson,* 47 id. 25.) It has also been frequently held that the return of the officer showing personal or substituted service must show a strict compliance with every requirement of the statute authorizing such service or the court will not obtain jurisdiction of the person. (*Werner* v. *Shons Co. supra; Mack* v. *Brown,* 73 Ill. 295; *Piggott* v. *Snell,* 59 id. 106; *Tompkins* v. *Wiltberger,* 56 id. 385.) By section 12 of the Chancery act the publication of constructive notice and the mailing of such notice by the clerk must be shown on the trial, and the statute provides: "The certificate of the clerk that he has sent notice in pursuance of this section shall be evidence." Nothing appears in the Chancery act from which it can

be said that the form of the notice shall designate whether the action sought against the absent defendant is for a personal judgment or one only affecting his status, such as in a proceeding to dissolve marriage by divorce, and the like. We are of the opinion, therefore, that the Chancery act does not of itself authorize jurisdiction of the person by constructive notice as was had in this case. It follows that if authorized by statute at all, such authority must be found in the Lunacy act. That act is limited entirely to cases where a person who is or is supposed to be insane or by unsoundness of mind incapable of managing his estate, or a drunkard or spendthrift, or otherwise incompetent, has property, real or personal, within the State. Section 1 of that act provides: "When any person having any estate, real or personal, shall be, or be supposed to be, an insane person, who, by reason of unsoundness of mind, is incapable of managing and caring for his own estate, or when any person having any estate shall be, or be supposed to be a drunkard or spendthrift or otherwise incompetent, as defined in this act, the county court of the county wherein such person resides, or if such person resides out of this State and has an estate within this State, then, the county court of the county where his real estate or a part thereof may lie, or if such non-resident has no real estate in this State, then the county court of the county where he may have personal property, shall, on the proper petition of any reputable citizen of such county, for the appointment of a conservator of the person or estate (or both) of such person, proceed in the manner hereinafter provided, to ascertain whether such person be an insane person, who, by reason of unsoundness of mind, is incapable of managing and caring for his own estate, a drunkard, spendthrift or incompetent as aforesaid: Provided, that in any county wherein a probate court is or hereafter may be established, such application shall be made to said probate court." Section 2 is as follows: "On any petition for the appointment of

a conservator of any person being filed, the court shall set said cause for hearing, summons shall be issued returnable on any day of the term, and service thereof shall be had upon the person for whom a conservator is sought to be appointed, in the same manner by summons or otherwise as service is had in chancery, excepting that where personal service of such summons is had, such service shall be had at least three days before the return day of such summons. * * * If any person be found to be an insane person, as defined in this act, who by reason of such condition is incapable of managing or caring for his estate, or a drunkard, spendthrift or incompetent person, as defined by this act, it shall be the duty of the court to appoint a conservator for such person, or his estate or both: Provided, no nonresident of this State shall be appointed under this act as conservator."

It is evident that the act is primarily for the conservation of property of an incompetent. It has no application if the alleged incompetent has no property in this State. Chapter 85 of the Revised Statutes makes provision for such contingency. Chapter 86 is clearly intended to apply to persons residing within or without this State who have property in this State. It by its terms applies to cases where personal service may be had, and likewise substituted or constructive service.

It is argued that the language of sections 1 and 2, authorizing the court, "on the proper petition of any reputable citizen of such county, for the appointment of a conservator of the person or estate (or both) of such person," and where such person is found incompetent as described in the act, "it shall be the duty of the court to appoint a conservator for such person, or his estate or both," authorizes the appointment of a conservator for both the person and estate of a citizen of this State, though absent therefrom, who has been notified by constructive notice by publication and mailing. If such authority exists in that statute it is

to be found in the words "person or property or both." These words were evidently intended to cover the different cases that might arise as to incompetency, and it may well be argued that the statute shows a legislative intention to provide a conservator of both person and property of a domiciliary residing in the State, and a conservator for the property only where the incompetent domiciliary resides outside the State. It is by no means clear from the act itself that it is not so limited. This intent is indicated by the provision that the county or probate court of the county where the incompetent resides has jurisdiction of such petition, but if he is residing out of the State the court having jurisdiction is not the county or probate court of his residence in this State, if he has one, or last known place of residence in the State, but a county in which he owns real estate, if there be such, and personalty if no realty. This is evidently for the convenience of handling the subject matter of the conservatorship. If it were intended to also provide for a conservator of the person of a domiciliary of this State residing outside the State, it would seem that jurisdiction would have been conferred on the court of the county of his residence in this State rather than the county in which his property is located, which might be in the opposite extreme of the State.

There is another consideration which must not be lost sight of in endeavoring to determine the intention of the legislature. This concerns the practical difficulty of appointing a conservator of the person of one residing outside the State. It is provided, as we have seen, in section 2 of the Lunacy act, "no non-resident of this State shall be appointed under this act as conservator." Those who may be appointed, therefore, are residents of this State, and the inconvenience and impracticability of a resident of this State assuming charge and control of an incompetent person outside the limits of the State are so obvious as to require no demonstration. It seems clear that the requirement that

the conservator appointed shall be a resident of this State is made in order to have such conservator, together with the subject matter of the conservatorship, under the control of the courts of this State. Therefore, when considered in the light of the holdings of this court pertaining to service by publication on parties outside the State, it seems clear that if it was intended by the Lunacy act to authorize such method of obtaining jurisdiction of the person of a citizen absent from the State such authority would have been given in plain and unmistakable language, and, such language not appearing in the Lunacy act, we are of the opinion that it does not purport to confer the power on the courts of this State to take jurisdiction of the person of an alleged incompetent by constructive service where such alleged incompetent, though domiciled in this State, is absent from it. This being true, it does not become necessary to determine whether such an act, if it intended to confer jurisdiction on the courts of this State in such a case, would contravene the due process clauses of the State and Federal constitutions, interesting though such question is. There are likewise other questions, among which is that of comity and full faith and credit, which it is likewise unnecessary to consider here, as the views expressed dispose of the case.

We are of the opinion that the circuit and probate courts of Cook county were right in holding that the publication of notice and service by mail on Stanley McCormick did not confer jurisdiction on those courts to appoint a guardian of his person and that the Appellate Court erred in reversing the judgment of the circuit court.

The judgment of the Appellate Court is therefore reversed and the judgment of the circuit court is affirmed.

*Appellate Court reversed, circuit court affirmed.*