# MAX SHAPIRO v. ALMA LARSON.[1]

December 8, 1939.

No. 32,303.

[1]Reported in 289 N. W. 48.

*Erland Lind,* for appellant.

*Max Shapiro, pro se.*

Julius J. Olson, Justice.

Defendant, individually and as administratrix of an estate, appeals from an order denying her motion for new trial.

Plaintiff sought recovery of $150 for professional services rendered at defendant's request in the matter of probating an estate in Marshall county. It is founded upon a *quantum meruit.* He alleged that no part of his fee had been paid. Defendant answered by way of general denial; alleged payment of $20 on November 17, 1936, for "unnecessary and useless work performed by" plaintiff; that plaintiff on December 15, 1936, had obtained $600 from her "for which she is accountable as executrix" of another estate, "all of which money he still retains." By way of counterclaim she also sought recovery of $145 for expenses that she had incurred because of useless and unnecessary probate proceedings had in Marshall county, all of which were erroneously counseled and advised by plaintiff. Plaintiff's reply put in issue all new matter pleaded by defendant and alleged other facts in

the nature of confession and avoidance not deemed necessary to relate.

At the trial these facts were made to appear: Nels J. Larson died a resident of Marshall county and left an estate there which in due course was brought into probate in that county. Decedent was survived by several children, amongst them defendant Alma and her brother Robert. Robert died some time thereafter a resident of British Columbia, leaving an estate there which was duly brought into probate in that jurisdiction. The mother of Alma and Robert, Jennie A. Larson, later died testate in Hennepin county, and defendant was duly appointed executrix of her will and is still so acting, the proceedings in probate not having been closed. She, as such executrix, became entitled to receive the estate left by Robert, he having died a bachelor. Jennie was the divorced wife of Nels and as such had no interest in his estate.

In the administration of the estate of Nels the sum of $797.50 was decreed by the probate court to belong to Robert as a son and heir at law.

Defendant had employed plaintiff to act as her attorney in probating Jennie's estate. Robert's interest as an heir of Nels also became a matter of some importance in Jennie's estate to which it would go as an inheritance. To procure this money defendant sought the advice of plaintiff. There was some difficulty in procuring the money from Nels's administrator, the attorney having this in hand insisting that there must be administration had in this state of Robert's estate before his decreed portion could be paid. Plaintiff advised defendant that such administration was necessary and that such procedure be had in Marshall county, the inherited money being there in the hands of Nels's administrator. Defendant claims that she was persuaded to do this by plaintiff; that, so believing and acting upon his professional skill and integrity, she authorized this procedure as a necessary step to be taken to the accomplishment of the collection of Robert's inheritance. Accordingly such proceedings were thereupon had in and by the probate court of Marshall county that Alma was appointed administratrix and has duly assumed, exer-

cised, and performed her duties as such. A controversy later arose between plaintiff and Alma resulting in litigation. See State ex rel. Larson v. Probate Court, 204 Minn. 5, 283 N. W. 545. Plaintiff later brought suit against defendant for services rendered by him in Jennie's estate. That matter is still pending in another court. The present action was brought to recover for services rendered in the probating of Robert's estate in Marshall county.

Plaintiff's verdict for $150 cannot be assailed as excessive. Defendant so concedes. But she does raise several issues here as grounds for reversal, and to these we now direct our attention.

Her first four assignments of error relate to whether (1) she should have been permitted to present evidence that plaintiff had been paid for his services in the Marshall county proceedings, and (2) "if such evidence was not clearly admissible under the pleadings" that she "should have been allowed to amend her answer so as to more specifically allege payment."

 As to whether it is necessary for a defendant to specifically plead payment where the complaint alleges nonpayment, the courts are not in agreement. Thus we find Hughes v. Wachter, 61 N. D. 513, 238 N. W. 776, 100 A. L. R. 255, holding that where allegation of nonpayment is necessary in a complaint defendant may prove payment under general denial. Many cases bearing upon this question are commented upon in 31 Mich. L. Rev. 132, *et seq.* The writer of that article concludes that (p. 134):

"* * * the majority rule which requires that payment be specially pleaded is perhaps the more desirable. It has the merit of giving the plaintiff notice of the exact issue to be proved by the defendant, whereas a general denial gives no notice whatever."

This court has held in several cases that where the action is brought on a promissory note and the complaint alleges nonpayment a general denial does not raise a material issue; payment must be pleaded by the defendant as new matter. First Nat. Bank v. Strait, 71 Minn. 69, 73 N. W. 645; First State Bank v. Utman, 136 Minn. 103, 161 N. W. 398. On the question of neces-

sity of pleading payment, see 5 Dunnell, Minn. Dig. (2 ed. & Supps.) § 7468, and cases under notes. Numerous cases are cited and commented upon in 100 A. L. R. p. 264, *et seq.*

We need not determine in this case which is the controlling rule, or that the one we have adopted in promissory note cases is applicable to the present case, for, as we have seen, the complaint alleges the reasonable value of plaintiff's attorney's fees and that these were not paid. Defendant's answer denied liability *in toto* and alleged plaintiff was not entitled to anything. At the trial, in respect to proof of payment, the only thing she sought to establish, aside from plaintiff's alleged inefficiency in his professional work for her, was that $600 had been paid by her as executrix of the will of Jennie, and that a part of that sum came from Robert's estate. But it also clearly appears that this very item is involved in another action pending before another court. The jurisdiction of such court is not questioned. In that cause the present plaintiff is seeking to recover his fees in the Jennie Larson probate matter. Defendant here is also the defendant there, but in a wholly distinct and different cause arising out of alleged professional services rendered in another estate. This being so, the court was of opinion that such a cause could not be gone into collaterally in the present case. The court said, in instructing the jury:

"You will disregard the item of $600 in connection with the fees in another estate, because it is not an issue, or part of an issue, in this case * * *."

We think the court was right, because it is a familiar principle that once a court of competent jurisdiction acquires jurisdiction of the subject matter and parties to a cause its authority continues until the matter is finally disposed of. Hence no court of coördinate authority is at liberty to interfere with its action. 7 R. C. L. p. 1067, § 105, and cases cited under note 8.

■ Defendant also claims that the court erred in instructing the jury that it was not erroneous for plaintiff to advise defendant that resort be had to the probate court of Marshall county to as-

sume jurisdiction of Robert's estate. Upon the pleadings, and the proof too, there is no showing of lack of jurisdiction by that court. It acquired jurisdiction upon what we must assume to have been adequate jurisdictional grounds. So the rule applies that "the presumption of jurisdiction on collateral attack is conclusive, unless the want of jurisdiction affirmatively appears from the record itself." 5 Dunnell, Minn. Dig. (2 ed.) § 7774, and cases cited under note 95.

■ The probate court is a court of record and one of superior jurisdiction. Its records import verity and can be impeached only in a direct proceeding. Its orders, judgments, and decrees are not subject to collateral attack for error or irregularity. 5 Dunnell, Minn. Dig. (2 ed. & Supps.) § 7769a, and cases under notes 33, 34, and 35.

■ A court of general jurisdiction has only appellate jurisdiction in probate matters, as, within its sphere, the original jurisdiction of the probate court is exclusive. *Id.* § 7770c, and cases under note 60.

■ Defendant's duties in the two estates involve different accountings in the proceedings had and to be had. Her attorney's fees, her own compensation, and other items to be credited in her final accounts necessarily must be separate and distinct. She could not, in her representative capacity in the two estates at least, throw into a hotchpot expenditures or obligations created or suffered by her in two different estates and proceedings. And this is the more apparent when one considers that there are two different courts having these estates in hand, each having jurisdiction within its own proper sphere.

Upon these facts the result reached by the court should not be disturbed.

Order affirmed.