HERBERT M. JASPERSON, BY MABEL L. DREW, HIS GUARDIAN, v. DAVID JACOBSON AND ANOTHER.[1]

May 29, 1947.

No. 34,349.

[1]Reported in 27 N. W. (2d) 788.

*Alfred A. Donaghue* and *Mart M. Monaghan,* for appellants.
*Walter C. Boland,* for respondent.

MATSON, JUSTICE.

Defendants appeal from an order striking their answer as sham and from the judgment entered pursuant to such order in an action brought by plaintiff, through his guardian, to recover possession of his residential premises located in Hennepin county and for the cancellation of certain receipts purporting to evidence a sale of said premises by plaintiff to defendants.

Mabel L. Drew, plaintiff's sister, on April 16, 1946, executed and filed with the clerk of the Hennepin county probate court a petition to have her brother, the plaintiff herein, adjudged an incompetent and asking that she be appointed general guardian of his person and estate. On the following day, April 17, she filed a certified copy of such petition in the office of the register of deeds for said county pursuant to M. S. A. § 525.543, which provides:

"After the filing of the petition, a certified copy thereof may be filed for record in the office of the register of deeds of any county in which any real estate owned by the ward is situated and if a resident of this state, in the county of his residence. *If a guardian be appointed on such petition,* all contracts except for necessaries, and *all transfers of real or personal property made by the ward after such filing and before the termination of the guardianship shall be void.*" (Italics supplied.)

An order of the probate court, dated April 16, 1946, providing for a hearing on the aforesaid petition on May 8 was served on plaintiff by leaving a true and correct copy thereof at his house of usual abode with a person of suitable age and discretion then residing therein. No one appeared either in support of or in opposition to the petition at the hearing on May 8, and as a result the matter was stricken from the court calendar.

Before any further steps were taken in the guardianship proceedings, plaintiff on May 14, 1946, purported to sell, and to deliver possession of, the above premises to defendants for $5,000, and in evidence thereof issued a written receipt acknowledging a down payment of $50. On May 16, 1946, and again on May 18, plaintiff issued receipts acknowledging further payments on the purchase price, in the respective sums of $325 and $33. Defendants took immediate possession of the premises.

Thereafter, namely, on June 10, 1946, plaintiff's aforesaid sister, alleging that she had through inadvertence failed to appear at the hearing on May 8, petitioned the court for an order reinstating the guardianship petition for hearing on the court's calendar. Thereupon the probate court, under date of June 26, 1946, issued an order requiring plaintiff to show cause before the court on July 11 why said petition for guardianship should not be reinstated for hearing forthwith. This order to show cause was served on plaintiff personally on June 28. Pursuant to the hearing on July 11, the court made an order appointing the sister as guardian. This order specifically recited that the sister had appeared in support of the guardianship petition and that no one had appeared in opposition thereto. Letters of guardianship were issued as of July 18, 1946.

Subsequent to the foregoing proceedings, plaintiff, through his guardian, brought this action for cancellation of the receipts and for recovery of possession of the premises, and in his complaint alleged the filing with the register of deeds of a verified copy of the guardianship petition, the appointment of a guardian pursuant to said petition, and further alleged that the execution of the aforesaid receipts evidencing a sale of the premises had been fraudulently obtained by defendants at a time when plaintiff was mentally incompetent and unable to understand the nature of his acts, and that the possession of the premises had also been obtained by fraud. By their joint answer, defendants denied generally the allegations of the complaint and in addition specifically alleged the purchase of the premises and their willingness to pay the entire balance of the sale price by making a deposit thereof with the court. Plaintiff,

upon the pleadings and records on file, together with certain affidavits establishing the facts hereinbefore recited, made a motion to have the answer stricken as sham and for entry of judgment. This motion was granted, and judgment was ordered as prayed, except as to certain damages which are not here material. In its memorandum, the trial court expressed its opinion that the purchase-and-sale transaction was necessarily void under § 525.543, above quoted, in that the sale took place after the filing with the register of deeds of a verified copy of the guardianship petition and pursuant to which petition a guardian was thereafter appointed. The trial court expressed the view that the probate court had full jurisdiction upon the filing of the guardianship petition to appoint a guardian, even though the personal service upon the alleged incompetent as provided by M. S. A. § 525.55, might be defective.

■ An answer is sham when it is clearly and indisputably false and tenders no real issue. Upon a motion to strike an answer as sham, the duty of the court is to determine whether there is an issue to try, and not to try the issue. Zinsmaster Baking Co. v. Commander Milling Co. 200 Minn. 128, 273 N. W. 673; 2 Pirsig's Dunnell, Minn. Pl. § 1169; 5 Dunnell, Dig. & Supp. § 7658. Defendants by their general denial have in form at least raised an issue as to whether a guardian was ever appointed pursuant to the petition filed with the probate court. Is the issue false or genuine? If the appointment is not subject to collateral attack, then, obviously, the purchase-and-sale transaction between plaintiff and defendants is void, and there is then in fact no issue to be tried. If, on the other hand, the jurisdiction of the probate court to appoint a guardian is subject to a successful collateral attack, defendants' general denial raised a genuine issue.

■ Does the filing of a petition for an adjudication of incompetency and the appointment of a guardian, *without the service of notice upon the alleged incompetent,* confer jurisdiction for the valid appointment of a guardian? Minn. Const. art. 6, § 7, provides that "A probate court shall have jurisdiction over the estates of deceased persons and persons under guardianship * * *." The word "estates"

is used only with reference to deceased persons, so that the proper reading of the constitutional provision is that *a probate court shall have jurisdiction over the estates of deceased persons, and over persons under guardianship.* A general jurisdiction over the subject of guardianship is thereby conferred. Jacobs v. Fouse, 23 Minn. 51; State ex rel. Chesley v. Wilcox, 24 Minn. 143, 147-148; State ex rel. Martin v. Ueland, 30 Minn. 277, 15 N. W. 245. Obviously, there is a difference in the nature of the jurisdiction granted over the estates of deceased persons and that conferred over the subject of guardianship. The former is exercised through proceedings in rem (Fridley v. Farmers & M. Sav. Bank, 136 Minn. 333, 336-337, 162 N. W. 454, 455, L. R. A. 1917E, 544), whereas the latter (which involves both rights in rem and rights in personam) is, *with respect to original proceedings for the appointment of a guardian,* primarily exercised through proceedings in personam. McCormick v. Blaine, 345 Ill. 461, 178 N. E. 195, 77 A. L. R. 1215, with annotation at 1227.

"* * * A judgment *in rem* may be briefly defined as one founded on a proceeding instituted not primarily against the person but against or upon some *thing or subject matter* the status or condition of which is to be determined. Such judgment is one affecting the status of the *res.* A proceeding *in personam* is a proceeding against the person. It involves his personal rights and may involve his right to specific property or the exercise of the ownership of such property, but *it is based on jurisdiction of his person.*" (Italics supplied.) McCormick v. Blaine, 345 Ill. 465, 178 N. E. 197.[2]

If we keep in mind the fundamental distinction between a jurisdiction in rem and a jurisdiction in personam, it becomes obvious that principles and decisions governing the acquirement of the former are not necessarily controlling as to the latter. Although the filing of a proper petition for the administration of a decedent's estate, without the giving of notice, confers jurisdiction over the estate or the *res* (In re Estate of Barlow, 152 Minn. 249, 188 N. W.

[2]See, Woodruff v. Taylor, 20 Vt. 65; Windsor v. McVeigh, 93 U. S. 274, 14 S. Ct. 1216, 23 L. ed. 914; Austin v. Royal League, 316 Ill. 188, 147 N. E. 106.

282), it does not follow that merely filing a petition in initial guardianship proceedings, without notice, gives the court jurisdiction over the person of an alleged incompetent. It must be borne in mind that there is a difference between proceedings dealing with a status once established and proceedings to establish such a status. We are here concerned with the nature and the acquirement of jurisdiction in original proceedings for the creation of a guardianship status, and not with the nature and exercise of jurisdiction over such status after it has once been established.[3] The condition or status of the the alleged incompetent is not conceded, but is the main issue to be tried, and this issue is tried with the presumption, obtaining universally, that the one proceeded against is competent in fact.

"* * * It seems incongruous to say that courts may secure jurisdiction of a person, under a petition to determine whether he is incompetent, by assuming a status of incompetency, which can be determined only by hearing on the petition and overcoming the presumption, everywhere recognized, that such person is sane. * * * To presume such person insane in order to establish jurisdiction would be proving the issue by assuming its determination." McCormick v. Blaine, 345 Ill. 473, 178 N. E. 200.

In State ex rel. Degen v. Freeman, 168 Minn. 374, 375, 210 N. W. 14, involving a guardianship proceeding, this court correctly observed:

"* * * The filing of a proper petition gives it jurisdiction of the subject matter of the particular case, *and by service of a warrant or process, or by his voluntary appearance, it acquires jurisdiction of the person.*" (Italics supplied.)

Obviously, in the absence of a voluntary submission to the jurisdiction of the court (as in Scott v. Whitely, 168 Minn. 74, 209 N. W. 640), the filing of a proper petition in guardianship proceedings to have a person adjudicated an incompetent does not of itself confer

---

[3]See, Restatement, Judgments, § 33, *comments a* and *b,* and Restatement, Conflict of Laws, § 109, as to jurisdiction in general over status and as to necessity for giving notice of any attempted exercise of jurisdiction.

jurisdiction over the person of the alleged incompetent, and, in order to confer such jurisdiction and as a prerequisite to a valid adjudication, an adequate notice, conforming to the constitutional requirements of due process of law, must be served upon the alleged incompetent advising him of the time and place of the hearing and affording him an opportunity to be present to contest the proceedings. See, In re Restoration to Capacity of Masters, 216 Minn. 553, 13 N. W. (2d) 487, 158 A. L. R. 1210; Restatement, Judgments, § 33, *comments a* and *b;* Restatement, Conflict of Laws, § 109. This is the general rule even in those jurisdictions whose statutes do not require the giving of notice.[4] Any rule to the contrary would be startling. It would indeed be shocking to one's sense of justice if by merely filing a petition in original guardianship proceedings, without the service of notice upon the alleged incompetent, a court could acquire jurisdiction to declare a man *non compos mentis,* to divest him of control of his property and to restrict his freedom of action as a normal human being.

■ We now come to a determination of the manner of giving the notice in order to confer jurisdiction over the person of an alleged incompetent. In State ex rel. Chesley v. Wilcox, 24 Minn. 143, 148, this court held:

"The manner in which jurisdiction conferred by the constitution on any court or officer shall be exercised when not prescribed by the constitution itself, or the power to regulate it vested elsewhere, may be regulated by the legislature."[5]

By appropriate enactment, § 525.55, with respect to the hearing

[4]In Supreme Council v. Nicholson, 104 Md. 472, 65 A. 320, 10 Ann. Cas. 213; McKinstry v. Dewey, 192 Iowa 753, 185 N. W. 565, 23 A. L. R. 587; In re Guardianship of Hruska, 230 Iowa 668, 298 N. W. 664, 138 A. L. R. 1359; Hunt v. Searcy, 167 Mo. 158, 67 S. W. 206; McCormick v. Blaine, 345 Ill. 461, 178 N. E. 195, 77 A. L. R. 1215; Annotations, 23 A. L. R. 594, 77 A. L. R. 1227, and 138 A. L. R. 1364.

[5]See, Davis v. Hudson, 29 Minn. 27, 11 N. W. 136; In re Guardianship of Carpenter, 203 Minn. 477, 480, 281 N. W. 867, 869.

upon a petition for an adjudication of incompetency, our legislature has specifically provided:

"* * * *At least 14 days* prior to such time, *personal* service *shall* be made upon the ward." (Italics supplied.)

■ In applying the foregoing statute to the instant case, it is clear that service of the notice upon plaintiff in advance of the hearing on May 8 by leaving a copy thereof at his house of usual abode was of no avail. The statute (§ 525.55) specifies "personal service." Personal service of a notice is made by delivering it to the person named *in person* and is not accomplished by leaving a true and correct copy thereof for him at his house of usual abode. Moyer v. Cook, 12 Wis. 372.

■ On May 8, no appearance having been made either in support of or against the petition for the appointment of a guardian, the matter was stricken from the calendar. Merely striking a matter from the court calendar does not of itself constitute a dismissal of the action or proceeding. The petition on file was not thereby dismissed, but was still effective as a basis for obtaining a hearing for the appointment of a guardian. The court's order providing for a hearing of the matter on July 11 was served on plaintiff in person on June 28. Clearly, the appointment of a guardian on July 11, followed by the issuance of letters of guardianship on July 18, was made on the petition as required by the *lis pendens* statute (§ 525.543), unless the personal service made on plaintiff on June 28 was defective so that the court failed to acquire jurisdiction.

■ The order of the court set the hearing for July 11, but the notice thereof was not served on plaintiff personally until June 28. M. S. A. § 645.15, provides:

"Where the performance or doing of any act, duty, * * * or thing is ordered or directed, and the period of time or duration for the performance or doing thereof is prescribed and fixed by law, such time, * * * shall be computed so as to exclude the first and include the last day of any such prescribed or fixed period or duration of time."

This rule for the computation of time is of long standing. State ex rel. Currie v. Weld, 39 Minn. 426, 40 N. W. 561; State ex rel. Effertz v. Schimelpfenig, 192 Minn. 55, 255 N. W. 258. Excluding the day of service as the first day of the period, but including the last day or the date of the hearing, plaintiff was in fact given only 13 days' notice and not "at least 14 days" as required by the statute. The statutory requirements must be strictly observed in appointing the guardian of an alleged incompetent. Stevens v. Stevens, 266 Mich. 446, 254 N. W. 162. Jurisdiction to appoint a guardian can be acquired only in the manner which the statute specifies. Davis v. Hudson, 29 Minn. 27, 32, 11 N. W. 136, 138; Behrensmeyer v. Kreitz, 135 Ill. 591, 638, 26 N. E. 704, 717. Clearly, the failure to serve plaintiff with notice "at least 14 days" in advance of the hearing prevented the court from obtaining jurisdiction over his person, and its order appointing a guardian may therefore be set aside on jurisdictional grounds in a direct proceeding brought for that purpose. The question remains, however, whether the appointment of a guardian herein is subject to collateral attack.

■ It is the settled law of this state that a judgment of a probate court, as a court of superior jurisdiction, cannot be attacked collaterally for want of jurisdiction not affirmatively appearing on the face of the record. The mere absence from the record of facts essential to jurisdiction does not render an order, judgment, or decree subject to collateral attack. The presumption of jurisdiction is conclusive unless the want of jurisdiction affirmatively appears from the record itself. Davis v. Hudson, 29 Minn. 27, 11 N. W. 136; State ex rel. Degen v. Freeman, 168 Minn. 374, 210 N. W. 14; 3 Dunnell, Dig. & Supp. § 5141; 5 Dunnell, Dig. & Supp. §§ 7774 and 7782. In the instant case, the record affirmatively shows that service was made on plaintiff only 13 days in advance of the hearing and not "at least 14 days" as required by statute. This affirmative defect of record as to service rebuts the presumption of jurisdiction. The record is silent as to any other mode or manner of service. In determining the question of jurisdiction from an examination of the record, if the record shows a particular mode or manner in which

jurisdiction over the alleged incompetent was acquired, it will not be presumed to have been obtained in any other way, in the absence of any averment or recital to that effect.[6]

Since the writing of the foregoing, our attention has been directed by the dissent to the decision of Kurtz v. St. Paul & Duluth R. Co. 48 Minn. 339, 51 N. W. 221, 31 A. S. R. 657, cited in the dissent. This decision involves a collateral attack made upon the appointment of a guardian of the estates of *nonresident infants* on the ground of an alleged lack of jurisdiction because notice was not served on such infants personally. The court held that effective jurisdictional notice had been served in compliance with the provisions of G. S. 1866, c. 59, § 13, governing the appointment of guardians over the estates of nonresident minors, in that the natural guardian of the infants, their mother, with whom they resided, had acquired actual notice, because she was the petitioner, and also by reason of the further fact that notice, as directed by the court, had been served on their married sister, Mary Burns, who was then an actual resident of this jurisdiction. *Obviously, this decision, which involves the estate of nonresident minors and concerns service under a statute which is entirely different from the one pertaining to the instant case, is not contrary to the majority opinion, in that effective jurisdictional notice was served in compliance with the statutory provisions pertinent thereto.* A number of other decisions cited in the dissent are clearly distinguishable on both principle and fact and are not controlling.[7] The words of each opinion "are to be read in the light of

[6]Morey v. Morey, 27 Minn. 265, 6 N. W. 783; Godfrey v. Valentine, 39 Minn. 336, 40 N. W. 163, 12 A. S. R. 657; Brattland v. Calkins, 67 Minn. 119, 69 N. W. 699; Holmes v. Loughren, 97 Minn. 83, 105 N. W. 558; Leland v. Heiberg, 156 Minn. 30, 194 N. W. 93; Brown v. Reinke, 159 Minn. 458, 199 N. W. 235, 35 A. L. R. 413; In re Application of Peters to Vacate Third Avenue, 163 Minn. 206, 203 N. W. 593; 3 Dunnell, Dig. & Supp. § 5141. In Barber v. Morris, 37 Minn. 194, 33 N. W. 559, 5 A. S. R. 836, the earlier case of Gemmell v. Rice, 13 Minn. 371 (400), was expressly overruled.

[7]Hanson v. Nygaard, 105 Minn. 30, 117 N. W. 235, 127 A. S. R. 523, and In re Estate of Gilroy, 193 Minn. 349, 258 N. W. 584, both involved jurisdiction over the estates of deceased persons; in State ex rel. Degen v. Freeman, 168 Minn. 374, 210 N. W. 14, the want of jurisdiction did not appear

the facts of the case under discussion. To keep opinions within reasonable bounds precludes writing into them every limitation or variation which might be suggested by the circumstances of cases not before the Court. General expressions transposed to other facts are

---

affirmatively, but the court, however, recognized that jurisdiction of the person may not be obtained by the mere filing of a petition but only by the service of a warrant or process or by voluntary appearance; Scott v. Whitely, 168 Minn. 74, 209 N. W. 640, merely establishes that service of process is not necessary where the alleged incompetent voluntarily submits to the court's jurisdiction; In re Guardianship of Overpeck, 211 Minn. 576, 2 N. W. (2d) 140, involved jurisdiction over the property of a ward whose status as an incompetent had already been established and was not subject to attack; In re Guardianship of Carpenter, 203 Minn. 477, 281 N. W. 867, involved a *direct* attack upon the jurisdiction of a probate court because neither the petition nor the order of appointment averred or found incompetency; In re Guardianship of Strom, 205 Minn. 399, 286 N. W. 245, merely determines that original jurisdiction for the appointment of a guardian is exclusively vested in the probate court; State ex rel. Martin v. Ueland, 30 Minn. 277, 15 N. W. 245, merely held that the probate court had exclusive jurisdiction in cases of guardianship.

In the absence of an existing status of adjudicated incompetency, this court has never held that jurisdiction for the appointment of a guardian of either the estate or the person of an alleged incompetent may be obtained without the service of notice or process in compliance with the statutory provisions governing the exercise of probate jurisdiction.

Smith v. Smith, 123 Minn. 431, 144 N. W. 138, 52 L.R.A.(N.S.) 1061, involved the exercise by the district court of jurisdiction in rem over the property of nonresidents upon whom personal service was effected without the state.

In State ex rel. Martin v. Ueland, 30 Minn. 281, 15 N. W. 246, cited in both the majority opinion and in the dissent, Mr. Justice Mitchell carefully pointed out that the constitution must be construed and understood with reference to the state of things that existed when it was adopted, namely, with respect to the doctrines which prevailed in Minnesota Territory and in the states from which it borrowed its probate system, and that the constitutional grant of jurisdiction in both law and equity "must be understood as having reference to equity jurisdiction and equity jurisprudence as then existing and administered, and not to a system which formerly obtained in England, but which had never prevailed in this state."

often misleading." Armour & Co. v. Wantock, 323 U. S. 126, 133, 65 S. Ct. 165, 168, 89 L. ed. 118, 123.

The dissent ignores the distinction between the nature of the jurisdiction to be acquired in original proceedings for the creation of a guardianship status and the nature of the jurisdiction exercised after such status has once been created. Failure to heed this vital distinction leads to an erroneous interpretation of the majority opinion, to the effect that the jurisdiction granted in guardianship matters must be exercised exclusively through proceedings in personam. As hereinbefore explicitly stated, such is not the case. Initial proceedings, however, for the creation of a status of incompetency—that is, to adjudicate a person to be incompetent in the first instance—does involve an exercise of jurisdiction in personam, and the manner of the exercise of this jurisdiction, when not prescribed by the constitution itself, is, as hereinbefore indicated, for the legislature to determine by statutory regulation. State ex rel. Chesley v. Wilcox, 24 Minn. 143, *supra*. By § 525.55, the legislature has prescribed the manner in which jurisdiction may be acquired, and compliance with the provisions thereof obviously involves no nullification of § 525.543 as a *lis pendens* statute. Under the provisions of the latter section, the petition becomes operative as a notice of *lis pendens* the moment a certified copy thereof is filed with the register of deeds, and all transfers of real and personal property thereafter shall be void *if a guardian be* (thereafter) *appointed on such petition* in the manner prescribed by § 525.55. Compliance with these statutory provisions obviously does not constitute a nullification or denial of the legislative power to regulate the manner of the exercise of the jurisdiction which the constitution has conferred. M. S. A. § 525.81, merely specifies the instrument to be used in invoking the court's jurisdiction, but does not govern the manner in which such instrument shall be used to be effective.

The trial court erred in striking out the answer as sham and in directing the entry of judgment for plaintiff.

Reversed.

THOMAS GALLAGHER, JUSTICE (dissenting).

I am of the opinion that the probate court had jurisdiction to make its order of July 18, 1946, appointing plaintiff guardian of the estate of Herbert M. Jasperson; that hence said order was not subject to collateral attack; and, in consequence, that the filing in the register of deeds' office of a certified copy of the petition in the guardianship proceedings under the provisions of § 525.543 had the effect of rendering void the real estate transaction here involved.

1. We have held that the probate court's jurisdiction includes not only "the appointment of guardians and the control over their official actions, *but the care and protection of the estates of the wards,* formerly vested in the court of chancery." State ex rel. Martin v. Ueland, 30 Minn. 277, 282, 15 N. W. 245, 247; In re Guardianship of Strom, 205 Minn. 399, 403, 286 N. W. 245, 248; In re Guardianship of Overpeck, 211 Minn. 576, 2 N. W. (2d) 140. Once such jurisdiction is acquired in the manner prescribed by law, orders subsequently made therein are not subject to collateral attack. Fridley v. Farmers & M. Sav. Bank, 136 Minn. 333, 162 N. W. 454, L. R. A. 1917E, 544; In re Estate of Barlow, 152 Minn. 249, 251, 188 N. W. 282, 283; Shapiro v. Larson, 206 Minn. 440, 289 N. W. 48.

2. Minn. Const. art. 6, § 7, confers the described jurisdiction. M. S. A. § 525.81 (formerly Mason St. 1927, § 8708), provides that such jurisdiction may be invoked by the filing of a proper petition in all proceedings in said court, and we have repeatedly held that such *filing, and not the service or publication of the statutory notice,* gives the probate court jurisdiction over the estate of an *incompetent,* as well as that of a decedent. Hanson v. Nygaard, 105 Minn. 30, 117 N. W. 235, 127 A. S. R. 523; Scott v. Whitely, 168 Minn. 74, 209 N. W. 640; State ex rel. Degen v. Freeman, 168 Minn. 374, 210 N. W. 14; In re Estate of Gilroy, 193 Minn. 349, 258 N. W. 584; In re Guardianship of Carpenter, 203 Minn. 477, 281 N. W. 867. This rule is otherwise expressed in 5 Dunnell, Dig. § 7783e, as follows:

"Administration proceedings are in rem and jurisdiction is not acquired by notice to interested parties. *Notice may be made jurisdictional by statute, but it is not a requirement of due process of law.*

*If a statute requires a notice, but does not make it jurisdictional* [§ 525.55 does not make jurisdictional the service of the notice therein specified], *the want of notice does not render subsequent proceedings void and subject to collateral attack, but merely renders them voidable on direct attack."* (Italics supplied.)

The rule is more explicitly stated in Hanson v. Nygaard, *supra,* as follows (105 Minn. 37, 117 N. W. 238, 127 A. S. R. 523) :

"* * * jurisdiction of the probate court over the estate of a deceased person attaches * * * by the presentation to the court of a proper petition * * * the failure to give proper notice to interested parties * * * is an irregularity which renders the subsequent proceedings voidable and subject to be set aside on motion or appeal. * * * the validity of the subsequent proceedings cannot be questioned in a collateral proceeding."

3. Notwithstanding an early case contra (Davis v. Hudson, 29 Minn. 27, 11 N. W. 136), we have applied the doctrine of Hanson v. Nygaard uniformly to matters involving the *property of incompetents under guardianship,* as well as to estates of deceased persons. Thus, in Scott v. Whitely, *supra,* involving a *guardianship* matter, we said (168 Minn. 76, 209 N. W. 641) :

*"Jurisdiction depends upon the filing of the petition and not upon notice.* Hanson v. Nygaard, 105 Minn. 30, 117 N. W. 235, 127 Am. St. 523. *But the notice contemplated by G. S. 1923, § 8925, is for the benefit of the incompetent and is intended to advise him of the acts of others concerning him.* Its necessity does not exist when he makes the petition himself. It, then, is a useless and unnecessary act which the law neither requires nor expects. *No one but the party entitled to the notice can raise the question of want of notice."* (Italics supplied.)

While it may be that jurisdiction of the *person,* as distinguished from the *property,* of the ward may be delayed until personal service of the notice upon the ward, jurisdiction over the ward's estate is acquired immediately upon the filing of the petition. This distinc-

tion is set forth in State ex rel. Degen v. Freeman, 168 Minn. 374, 375, 210 N. W. 14, as follows:

"The probate court by the nature of its organization has jurisdiction over insane persons, and jurisdiction to render such a judgment as was entered. * * * *The filing of a proper petition gives it jurisdiction of the subject matter of the particular case,* and by service of a warrant or process, or by his voluntary appearance, it acquires jurisdiction of the person." (Italics supplied.)

In In re Estate of Gilroy, *supra,* we stated (193 Minn. 351, 258 N. W. 586):

"* * * He [appellant] concedes that the probate court is the only court having jurisdiction of the estates of deceased persons and *persons under guardianship.* The state constitution so provides. Art. 6, § 7. The legislature is without power to curtail or limit the general jurisdiction thus conferred by the constitution, * * *. *Its general jurisdiction attaches at once upon the presentation to it of a proper petition by some person entitled to take such action."* (Italics supplied.)

In re Guardianship of Carpenter, *supra,* expressed the rule as follows (203 Minn. 480, 281 N. W. 869):

"* * * The probate court is by the constitution invested with jurisdiction of persons under *guardianship* (art. 6, § 7), but the statute regulates the manner in which a probate court is authorized to take jurisdiction of any particular estate or person. 2 Mason Minn. St. 1927, § 8708, provides that a particular probate court is invested with authority to proceed when a *petition is filed with it respecting a matter within its jurisdiction.* An order made by the probate court without such petition in a matter within its jurisdiction is void and of no effect." (Italics supplied.)

4. Perhaps the reason for the departure from the rule of Davis v. Hudson, 29 Minn. 27, 11 N. W. 136, *supra,* might be found in the language of Mr. Justice Mitchell in Kurtz v. St. Paul & Duluth R. Co. 48 Minn. 339, 342, 51 N. W. 221, 31 A. S. R. 657, wherein he referred thereto, but stated:

*"* * * Notice of the hearing for such appointment is not a constitutional prerequisite to the jurisdiction to name a guardian.* Appointing a guardian deprives no one of his property, and does not change or affect the title of it. Letters of guardianship are merely a commission which places the property of the ward in the care of an officer of the court as custodian, and in its effect is not essentially different from the appointment of a receiver, or temporary administrator, a jurisdiction which can be and frequently is exercised before service of any process. *The matter of notice of an application for the appointment of a guardian is, therefore, purely a matter of statutory requirement.* * * * *My own opinion is that when it appears that the person or property was the subject of guardianship, and that the letters were issued by the proper probate court, as were the facts here, the letters of guardianship are not subject to collateral attack, but, like letters of administration, are conclusive evidence of the due appointment of the person therein named, until reversed on appeal, or revoked by the court which granted them. This is the rule in most jurisdictions; and the practical difficulties and embarrassments resulting from a different rule are very apparent."* (Italics supplied.)

In no subsequent case was the doctrine of the Davis case adhered to.

5. It is stated in the majority opinion that the jurisdiction granted in guardianship matters must be exercised through proceedings *in personam* exclusively. This would seem to ignore the distinction between the jurisdiction over the person in guardianship matters and jurisdiction over the property of an alleged incompetent, as brought out clearly in State ex rel. Degen v. Freeman, 168 Minn. 374, 210 N. W. 14, *supra.*

In an early case, State ex rel. Martin v. Ueland, 30 Minn. 277, 280, 282, 15 N. W. 245, 246, 247, expressing the principle that in guardianship matters our probate courts operate in lieu of the old chancery courts and are governed by the same equitable principles, Mr. Justice Mitchell stated:

*"* * * in most of the American states, courts called probate, surrogate, or orphans' courts were established at an early day for the

settlement of the estates of decedents, and the determination of all questions arising in the course of administration, to the practical exclusion of equity jurisdiction over such matters. * * * Thus an important branch of equity jurisdiction, * * * was transferred to these courts. * * *

* * * * *

"* * * Its [probate court's] jurisdiction over the estates of persons under guardianship includes not only the appointment of guardians and the control over their official actions, but the care and protection of the estates of the wards, formerly vested in the court of chancery."

While the rule has often been expressed that *"equity acts in personam"* (2 Dunnell, Supp. § 3136), it is well settled that the legislature may confer upon equity courts a jurisdiction over property within the state as distinct from and independent of any personal jurisdiction acquired over the owner thereof. This rule is expressed in 19 Am. Jur., Equity, § 24, as follows:

"* * * The state has power to enact statutes under which the interests of persons in property within the state shall be affected so far as that property alone is concerned, even though such persons may not have been personally served with process within the state. This power has been very generally exercised."

Minnesota is in accord with these principles. In Smith v. Smith, 123 Minn. 431, 433, 144 N. W. 138, 139, 52 L.R.A.(N.S.) 1061, we stated the rule as follows:

"* * * If the enforcement of the decree is dependent solely upon the inherent powers of a court of chancery, the decree is, of necessity, a decree *in personam*, because, generally, equity jurisdiction is exercised *in personam* and depends upon the control of the court over the person of the parties. If, however, there is statutory power given to the court to effectuate the decree by passing title to the property, then the proceeding becomes in the nature of a proceeding *in rem*, and in such case service by publication upon nonresidents will confer jurisdiction to deal with the property."

As stated in 2 Dunnell, Supp. § 3136:

"The procedural maxim that 'equity acts in personam' must not be confused with the substantive right itself. This manner of procedure is no doubt due to an historical accident. * * * It seems much simpler in modern times, when we regard the principles of equity as constituting as much a part of our law as those of common law, to regard *equitable rights* with respect to *property* as rights *in rem* in the same sense that common-law rights are. * * * That equity acts in personam was one of its earliest maxims. Yet this principle was strictly applied only during the early classical period, and then, probably, to avoid conflict with law judges. Apart from methods of enforcement, most equitable remedies deal essentially with property rights. At present, moreover, equity is exercising an increasing jurisdiction in rem. This tendency, supported by many authors, may be attributed partly to reasons of convenience and necessity, partly to the merger of law and equity, and *partly to legislation.*" (Italics supplied.)

From the foregoing authorities, it is apparent that while the probate court may be governed in substance by equitable rules and principles in guardianship matters, there is nothing therein which constitutes a bar to legislative authority granting to probate courts jurisdiction over the property of incompetents as proceedings in rem without the service of process required in in personam proceedings. Likewise, it is clearly established by our decisions that there is no constitutional restriction against such legislative power. Hanson v. Nygaard, *supra.*

6. Accordingly, when the legislature enacted § 525.81, conferring jurisdiction upon the probate courts of this state in all matters, including guardianship proceedings, by the filing of the petition specified therein, its action was not in conflict with either the state constitution or the well-established equitable principles above set forth.

Likewise, when it enacted § 525.543, which, in effect, conferred the probate court's jurisdiction over the property of an incompetent immediately upon the filing of a petition, it gave further force to the

jurisdiction originally acquired under § 525.81. Section 525.543 provides:

"*After the filing of the petition,* a certified copy thereof may be filed for record in the office of the register of deeds of any county in which any real estate owned by the ward is situated and if a resident of this state, in the county of his residence. If a guardian be appointed on such petition, all contracts except for necessaries, and all transfers of real or personal property made by the ward after such filing and before the termination of the guardianship shall be void." (Italics supplied.)

This section superseded Mason St. 1927, § 8927, which had provided for such filing with the register of deeds *after* service of the statutory notice. The purpose of this change was indicated by Judge Albin S. Pearson, one of the sponsors of the revised code, in 20 Minn. L. Rev. 336, as follows:

"Section 132 changes G. S. 8927 so that a certified copy of the *petition only* need be filed in the office of the register of deeds, rather than the petition, notice, and proof of service; *and such filing may be made before service of the order. Usually when there is any occasion for giving constructive notice, time is an important element;* if desired, the result should be as readily obtained as in civil actions." (Italics supplied.)

7. Obviously, it was the intent of the legislature to protect the property of an incompetent from and after the filing of the petition in the office of register of deeds. It recognized that the probate court acquired jurisdiction over the same when the proceedings were initiated in such court by the filing of the petition therein. It expressly provided for continuing protection thereafter, regardless of when personal service was made upon the incompetent. Even though such subsequent service was long delayed, or ineffective, or procured only after several abortive attempts or returns, the original protective jurisdiction over the property continued and remained in full force and effect, under such statutory provisions, until the proceedings were dismissed or otherwise terminated.

96

By upholding here a collateral attack on the jurisdiction thus acquired, in substance the majority opinion nullifies the protective effect of §§ 525.81 and 525.543, notwithstanding the validity and constitutionality thereof and the clear and explicit directions therein. If the validity thereof be conceded, it must follow that the transaction attacked in these proceedings, occurring as it did subsequent to the filing of the petition in the register's office, was null and void under § 525.543. If it was null and void thereunder, it follows further that the answer stated no valid defense and was properly stricken.

