John BURMA, deceased, and Barbara Burke, guardian of John Burma, incompetent, Respondent,

v.

Charles STRANSKY, Appellant (C5–83–283),

Jadco Special Haulers, Inc., and David J. Morris, Appellants (C3–83–282),

Travelers Insurance Company, Appellant (C9–83–884),

State Farm Insurance Company, Jay L. Bennett and Deborah Carlson, State Surety Company, Thomas Hunziker, Minnesota Department of Public Welfare, Respondents.

Nos. C3–83–282 to C9–83–884.

Supreme Court of Minnesota.

Sept. 14, 1984.

Robert W. Murnane, St. Paul, for Travelers Insurance Co.

Richard A. Lind, Minneapolis, for Charles Stransky.

Donald M. Jardine, St. Paul, for Jadco Spec Haulers Inc. and David J. Morris.

Jerry C. Rachetto, Deadwood, S.D., Michael F. Fetsch, St. Paul, for Burma and Burke.

Mark Brennan, Minneapolis, for State Farm Auto Ins. Co.

Robert McGuire, Jay L. Bennett, Minneapolis, for Bennett et al.

Roger A. Pauly, Minneapolis, for State Surety Co.

John M. Degnan, Minneapolis, for Hunziker.

James Lackner, Asst. Atty. Gen., St. Paul, for Mn. Dept. of Publ. Welfare.

WAHL, Justice.

Charles Stransky and Jadco Special Haulers, Inc./David J. Morris (Jadco) appeal from an order of the Pine County District Court vacating the judgment of dismissal in a personal injury action brought against them on behalf of John Burma (Suit A). The district court vacated the judgment of dismissal because it was based on a stipulation of settlement entered into by Burma's guardian, whose appointment by the Pine County Probate Court was found by the district court to be invalid for lack of probate court jurisdiction. We reverse and reinstate the original judgment of dismissal in Suit A.

Travelers Insurance Company (Travelers) appeals the dismissal without prejudice of claims made against it and others in a second personal injury action (Suit B) brought by a substituted guardian on Burma's behalf based on the same injury as in Suit A. The district court, on vacating the judgment in Suit A, granted the Suit B defendants' motions for summary judgment and dismissed the claims in Suit B without prejudice as to each of the defendants. We affirm the granting of summary judgment for defendants and reverse the dismissal without prejudice as to each defendant.

On March 3, 1980, John Burma, then 76 years old, suffered a subdural hematoma and other serious injuries in an automobile accident. David Morris, driving a truck owned by Jadco, rear-ended the vehicle driven by Charles Stransky, in which Burma was a passenger, as it entered Interstate Highway 35W south of Pine City, Minnesota. After the accident, Burma's nieces, Bernie Masden and Sylvia Wiebenga, came to Minnesota from their homes in South Dakota to visit Burma in the hospital and to arrange for his care. While here, they contacted attorney Jay L. Bennett on Burma's behalf with regard to commencing litigation. Bennett met with Burma and obtained Burma's signature on a contingent fee agreement and Burma's authorization to allow other lawyers associated with Bennett to review Burma's medical records. Attorney Thomas Hunziker, who was associated with Bennett, pursued Burma's personal injury action by bringing Suit A on June 19, 1980, against Stransky, Morris, and Jadco.

On July 18, 1980, Bennett wrote to Masden and Wiebenga, telling them that he had obtained Burma's signature on the contingent fee agreement and had explained the personal injury action to him. He also indicated the possible need for a guardian for Burma in order to continue the action and warned the nieces not to expend a lot of money on Burma's behalf, because any recovery in the suit would not likely be large due to Burma's age.

Burma recovered from his injuries by the fall of 1980, but his physicians concluded that he was incompetent to pursue a legal action. A guardian therefore became necessary. Bennett contacted Masden and Wiebenga, both of whom declined to assume the responsibilities of guardian for Burma because they lived so far away.

On November 6, 1980, Bennett wrote to Barbara Burke, Wiebenga's daughter who lived in Blaine, Minnesota, with copies to Masden and Wiebenga, requesting that Burke serve as petitioner to appoint Bennett's secretary, Deborah Carlson, guardian for John Burma. There was no written reply to this letter from any of the relatives until the following March. Early in

December 1980, Bennett filed with the Pine County Probate Court a petition for the appointment of Carlson as guardian for Burma. Carlson was also the petitioner, and the petition listed Masden, Wiebenga and Burke as nearest kindred. The probate court ordered a hearing on the petition for December 22, 1980, and further ordered copies served on Burma, the director of the nursing home where Burma lived and on the relatives. Notice was personally served on Burma and the director, but no notice was ever served on any of the relatives. Bennett, Carlson and Burma appeared at the hearing on the petition. A letter from Burma's neurosurgeon, Dr. P. Thienprasit, was introduced into the record, advising that a guardian be appointed to handle Burma's personal affairs. The probate court granted the petition and issued letters of guardianship to Carlson. The probate court was aware that Carlson was Bennett's secretary and that the purpose of the guardianship was to pursue the personal injury action.

On March 2, 1981, Masden responded in writing to Bennett's letter of November 6, 1980. She said that neither she nor Wiebenga wanted an "outsider" appointed guardian; that the guardian should be her husband or herself; and that they would like to move Burma to a nursing home in South Dakota, where they could better look after his needs. There was no written response to this letter from Bennett. On May 4, 1981, Masden again wrote, asking to move Burma to South Dakota and requesting information as to how the law suit was progressing and the state of Burma's finances. Bennett replied with a list of Burma's expenses. On May 20, 1981, Masden again wrote for information as to how the suit was progressing, stating that she felt "in the dark on things." Bennett replied that they were taking depositions and arranging expert testimony and that the "legal process consumes much time."

On June 29, 1981, Hunziker sent a letter to Richard Lind, attorney for Charles Stransky, and Eugene Buckley, attorney for Jadco and David Morris. The letter proposed a settlement of Burma's personal injury action.

That fall, during a visit with Burma in the nursing home, Masden became suspicious about the guardianship arrangements. She wrote to Bennett on October 13, 1981, saying that unless he informed them of what was going on, they were going to find a different attorney. Bennett wrote back that his client was John Burma, not Masden or Wiebenga, and that, since his "office has assumed an additional burden in agreeing to function as Burma's fiduciary during the course of these proceedings," he was accountable only to Burma. This was the first notice to Masden, Wiebenga or Burke that the guardianship matter had been finalized.

Masden and Wiebenga retained attorney Jerry Rachetto of Deadwood, South Dakota, to look into the matter. On October 21, 1981, Buckley and Lind, the defendants' attorneys, received a letter from Rachetto stating that there were problems with the guardianship and that Bennett was to be dismissed as attorney for Burma. Hunziker wrote a letter to Buckley and Lind on October 26, 1981, stating that the guardianship appointment was proper and was done with the "full knowledge and consent" of Masden and Weibenga. Rachetto wrote to Bennett on October 27, 1981, specifically objecting to the continuation of any settlement attempts.

Following a telephone conversation on November 19, 1981, Buckley wrote to Hunziker, confirming agreement to a settlement offer by Hunziker. On December 10, 1981, Hunziker, Carlson and Burma appeared before the probate court and obtained approval of the proposed settlement. Burma's participation at that hearing included his approval of the amount of the settlement, his concern that the money be deposited in a bank in a small town near the nursing home and his concern that the money be deposited so as to earn maximum interest.

Michael Fetsch, a Minnesota attorney who associated with Rachetto, wrote to Buckley and Lind on December 10, 1981, to

give notice that Burma's relatives had moved the Pine County Probate Court to substitute Burke for Carlson as Burma's guardian in a petition that was filed December 12, 1981. Carlson signed releases of liability on December 21, 1981, and Hunziker, Buckley and Lind executed a stipulation of dismissal of the personal injury action. On January 4, 1982, after a hearing in probate court, Burke was substituted as Burma's guardian. On January 8, 1982, the district court entered a judgment of dismissal in Suit A.

The settlement became known to Burke's attorneys, Rachetto and Fetsch, early in January 1982. On January 8, 1982, Rachetto wrote to Lind and Buckley, the Suit A defendants' attorneys, to confirm a telephone conversation which indicated that Burke, as guardian, would seek to rescind the settlement and that the proceeds would be tendered back. Formal notice of rescission and offer of restoration was served on all of the parties to Suit A on January 12, 1982. The offer of restoration was never accepted.

On February 6, 1982, Burke commenced Suit B in district court against the original defendants plus Bennett, Hunziker, Carlson, and the parties' insurers. On February 26, 1982, Masden petitioned the probate court to void the appointment of Carlson as guardian based on the lack of notice to the relatives. On April 5, 1982, the probate court heard some discussion of the petition and continued the matter until the resolution of Suit B in district court.

All parties moved for summary judgment in Suit B. On June 15, 1982, the district court heard the motions and suggested that Suit B was barred by *res judicata* but granted time for Burke to move to vacate the judgment of dismissal in Suit A. Burke so moved, and hearings on that motion were held on September 3 and 16, 1982. The trial court granted the motion to vacate on December 17, 1982. The court also granted the Suit B defendants' motions for summary judgment and dismissed Burke's claims in Suit B without prejudice.

It reaffirmed those orders on remand from this court in May and June 1983.

The major issues raised by the various appellants are these:

1) whether the district court lacked jurisdiction in a collateral proceeding to void a guardianship created by the probate court;

2) whether under Minn.Stat. § 525.55 (1978) lack of notice to nearest kindred deprives the probate court of jurisdiction to appoint a guardian where the proposed ward has himself been properly served with notice of the guardianship hearing; and

3) whether the district court erred in granting summary judgment for defendants and then dismissing plaintiff's claims without prejudice.

1. The probate court in Minnesota has original and exclusive jurisdiction to appoint a general guardian for an incompetent person. Minn. Const. art. VI, § 11; *In re Guardianship of Strom*, 205 Minn. 399, 286 N.W. 245 (1939). Appellants Stransky, Jadco and Morris and respondents Bennett and Carlson argue that the order of the probate court appointing Carlson Burma's guardian cannot be collaterally attacked in district court. Persons relying upon the acts of the guardian, they argue, are entitled to rely upon those acts, and to allow a collateral attack would create uncertainties in third-party dealings with guardians. It is true that orders of the probate court may not be attacked collaterally in district court except where the probate court lacked jurisdiction and that lack of jurisdiction appears affirmatively on the face of the record. *Jasperson v. Jacobson*, 224 Minn. 76, 85, 27 N.W.2d 788, 794 (1947). Burke, substituted as guardian under the original guardianship, which she now challenges, sought to have the judgment entered on the settlement in Suit A vacated on the ground that the probate court had lacked jurisdiction to appoint the guardian who approved that settlement in Burma's behalf. If lack of notice to nearest kindred is jurisdictional, the district court did have jurisdiction to declare the appointment of

Carlson as guardian void. Lack of notice to those relatives appears on the face of the record. There is no proof of notice, and the attorneys agree that no notice was ever given. We hold that the district court, in this collateral proceeding, had jurisdiction to determine whether lack of notice to nearest kindred, which appeared affirmatively on the face of the record, was a jurisdictional defect in the guardianship proceeding in probate court.

2. The district court concluded that, while Burma was in need of a guardian, lack of proper notice to the specified relatives invalidated the guardianship proceeding. Was this decision correct? If the probate court had jurisdiction to appoint Carlson, her subsequent actions in agreeing to settle Suit A and to the stipulation of dismissal were valid. The substitution of Burke as guardian would have no effect on the validity of those acts. *See In re Adoption of Pratt*, 219 Minn. 414, 18 N.W.2d 147 (1945).

■ Section 525.55 (1978) governed the notice of guardianship appointment hearings in this case. It read:

If the petition be made by the person for whom a guardian or conservator is sought, or by a parent, custodian, or testamentary guardian or conservator of a minor under the age of 14 years, the court may hear the same with or without notice. In all other cases, upon the filing of the petition the court shall fix the time and place of the hearing thereof. At least 14 days prior to such time, personal service shall be made upon the ward or conservatee. If he has a spouse, custodian, or if there be a testamentary guardian or conservator named in the will of a decedent, notice shall be given to such persons and to such of the nearest kindred and in such manner as the court may direct. If he be a patient of any hospital or asylum, notice by mail shall be given to the superintendent thereof. If he be a non-resident or if after diligent search he cannot be found in this state, notice shall be given in such manner and to such persons as the court may determine.

In *Jasperson*, we held that defective notice to the prospective ward, under a very similar statute, deprived the probate court of jurisdiction to appoint a guardian. In that case, the notice was personally served on the prospective ward 13 days prior to the hearing, rather than 14 days as required by the statute. It is clear from *Jasperson* that proper notice to the prospective ward is jurisdictional. We are asked now to decide whether lack of notice to the nearest kindred operates similarly to deprive the probate court of jurisdiction. We conclude that it does not.

■ Section 525.55 emphasizes the importance of notice to the proposed ward by requiring personal service of the notice of the hearing. Personal service was made on John Burma. The legislature, in its concern for the best interests of the proposed ward, also wanted to guarantee, if possible, that some member of the family be notified of the guardianship hearing. This notice to the nearest kindred is to be made "in such manner as the court may direct." Minn. Stat. § 525.55. In this case, the petition for the appointment of Deborah Carlson as guardian for John Burma listed the names and addresses of Bernie Masden, Sylvia Wiebenga and Barbara Burke as nearest kindred. The probate court's order for hearing and service of process required notice to relatives. No notice was given. Under the statute, and in light of the probate court's order for notice, Bennett should have notified the relatives listed. His failure to do so was error, but we do not find that error to have deprived the probate court of jurisdiction. The essential notice required by the statute is to the proposed ward. Due process of law requires that the proposed ward be advised of the time and place of the hearing and be afforded the opportunity to be present to contest the proceedings. *Jasperson*, 224 Minn. at 83, 27 N.W.2d at 793. The interest of the proposed ward in the guardianship hearing is direct and personal, while the interest of kindred is indirect and more impersonal. The statute recognizes that

difference by mandating a more stringent notice requirement for the proposed ward. Because of the importance of the finality and stability of probate court orders and the lesser importance of notice to nearest kindred, it is only where there is defective notice to the proposed ward that the probate court lacks jurisdiction to appoint a guardian. The probate court was aware that the relatives in this case had declined to serve as either guardian or petitioner for the appointment of a guardian. The court had the authority to continue the hearing on the petition and decline to appoint the guardian until the relatives were properly notified, but there was nothing in the record before it or in the surrounding circumstances that indicated the necessity for doing so. Burma needed a guardian to proceed with the personal injury action, and the relatives had shown little, if any, interest in the process of appointing one for him.

We hold that lack of notice to nearest kindred of a guardianship hearing, required by section 525.55, did not deprive the probate court of jurisdiction to appoint a guardian where the ward received proper notice under the statute.[1] Carlson's appointment and her subsequent agreement to the settlement and stipulation of dismissal in Suit A were valid. The judgment in Suit A must be reinstated.

■ We are satisfied, not only that Carlson's appointment was valid, but also that, throughout these proceedings, Burma's interests were adequately represented. *See* Restatement (Second) of Judgments, §§ 35 and 72 (1982). At the outset of Suit A, Burma, on his own behalf, signed the contingent fee agreement with Bennett. Burma was Bennett's client and as such was entitled to Bennett's best efforts on his behalf. Bennett recovered double no-fault insurance benefits for Burma outside of Suit A. He tried to persuade Masden or Wiebenga to serve as Burma's guardian and Burke to serve as petitioner. He or his associate, Hunziker, took depositions, conducted investigation and eventually negotiated the final settlement. There is no indication of undue delay in the case. The discovery documents show that there were serious questions as to liability for the accident and causation of Burma's injuries. Burma appeared at the final settlement hearing on December 10, 1981, and clearly and intelligently participated in the proceedings. There is no indication that he was pressured to accept the settlement or that the settlement itself, $90,000, was inadequate, given Burma's age and previous medical condition and the facts surrounding the accident. While we do not approve of the apparent haste with which this case was settled after criticism from Burma's relatives, there is nothing in the record to suggest that Burma's attorneys or his guardian at any time inadequately protected his interests.

■ 3. The final issue we need consider is whether the district court erred in granting summary judgment for defendants and then dismissing the plaintiff's claims without prejudice. In Suit B, plaintiff Burke, on behalf of Burma, moved for summary judgment on the pleadings and other documents furnished the court on the ground that the appointment of guardian Deborah Carlson, and thus the settlement in Suit A, was void. The defendants also moved for summary judgment and/or dismissal of Suit B. All parties submitted the case as it then stood to the court for application of the law to the undisputed facts. The district court agreed with the defendants that Suit B was barred by the judgment in Suit A but allowed the plaintiff time to move the court to vacate the judgment in Suit A, which she did. On grant-

1. Effective August 1, 1981, the Minnesota Legislature amended section 525.55 to more clearly require notice to nearest kindred. At that time, subdivision 3 was added to the statute, which currently reads: "A defect in the service of notice or process, other than personal service upon the proposed ward or conservatee within the time allowed and the form prescribed in subdivisions 1 and 2, shall not invalidate any guardianship or conservatorship proceedings." This provision does not govern notice in this case but is an indication that our interpretation of the legislature's intent in the former statute is correct.

ing the motion to vacate, the court also granted the defendants' motions for summary judgment in Suit B and then dismissed Suit B without prejudice. This, defendants argue, was error. Summary judgment is a determination on the merits. *In re Estate of Bush*, 302 Minn. 188, 224 N.W.2d 489 (1974), *cert. denied*, 420 U.S. 1008, 95 S.Ct. 1454, 43 L.Ed.2d 768 (1975). Rule 56, Minnesota Rules of Civil Procedure, is, as this court pointed out in *Bush:*

> "a device designed to implement the stated purpose of the rules to secure a just, speedy and inexpensive determination of any action. A summary judgment permits the court to make a prompt disposition of an action on the merits if there is no genuine dispute regarding the material facts, and a party is entitled to judgment under the law applicable to such established facts."

302 Minn. at 211, 224 N.W.2d at 503 (quoting 2 Hetland & Adamson, Minnesota Practice, Civil Rules Ann. p. 563). The district court, in granting defendants' motions for summary judgment, made determinations on the merits and could not thereafter dismiss without prejudice the claims with regard to which those determinations were made.

Respondent Burke argues that the district court's order for summary judgment for defendants Travelers and State Farm was meant to be an order of dismissal without prejudice, since it was based on the court's vacation of the judgment in Suit A and the fact that the liability of Travelers' and State Farm's insureds would be litigated in reopened Suit A. In light of our holding that the judgment in Suit A was valid, summary judgment for defendants Stransky, Jadco, Morris, Travelers and State Farm was properly granted, since the claims against them in Suit B were barred by the judgment in Suit A. As to Bennett, Hunziker and Carlson, the district court granted summary judgment because there were "no genuine issues as to any material fact with regard to the claim against Bennett (Hunziker and Carlson) on the basis of which any judgment could be rendered in favor of the plaintiff." This constituted a determination on the merits as to the claims against the Bennett group.

In light of our holdings set out above, it is unnecessary for us to address the other issues raised by the parties. We reverse the order vacating the judgment in Suit A and affirm the granting of summary judgment for all defendants in Suit B.

Reversed in part, affirmed in part, and remanded for proceedings not inconsistent with this opinion.

COYNE, J., took no part in the consideration or decision of this case.