[1] Reported in 286 N.W. 245.
This is an appeal by Thora Strom from orders denying her alternative motion for amended findings or a new trial.
Appellant is a widow more than 83 years of age. On and prior to May 22, 1937, and at all times since that date, she "has been, and now is, so enfeebled in mind and body and by reason of old age and loss, imperfection, and deterioration of her mentality that she has at all times since said date been, and now is, incompetent to manage her person and her estate." She is and has been over said period suffering with a heart ailment "chronic and progressive," and "is * * * and has been suffering from a major mind disorder leading to senile psychosis"; that her mind does not function normally, and there is no probability of any substantial mental recovery; but if she be "required to rest and submit to medical advice and directions her life may be considerably prolonged." Such in substance are the findings. *Page 401 
We need not elaborate the many fact problems entering into the summary of the court's findings. There is so much to be gathered from the record, containing as it does 794 printed pages, that a résumé of the conflicting claims would only extend this opinion beyond reasonable bounds without thereby lending any help either to the litigants or to the profession.
As is not uncommon in cases of this nature, Mrs. Strom's relatives are hopelessly divided. For some of them the claim is made that while she is an eccentric in many respects, particularly with regard to money matters and her mode of living, yet she has shown shrewdness and capacity to handle her own affairs. Those who are of the view that her mind is hopelessly on the wane and far enough gone to require for her own good the appointment of a guardian of her person and estate naturally claim otherwise. There is much of conflict in the testimony from laymen as well as medical experts. The record discloses that these conflicting interests, on the part of relatives especially, may have had much to do with the testimony offered and received. Neither side can be said to be moved by altruistic motives alone. The reason probably is that she is possessed of securities and other property valued at from $40,000 to $50,000. The initial proceedings were commenced in September, 1937, at which time respondent Abrahamson was appointed by the probate court special guardian of the person and estate of Mrs. Strom. Later that month, upon the petition of respondent Olmanson to have the matter of her general guardianship determined, the entire controversy came before the probate court, and an order was entered on December 29 denying the appointment of a general guardian and requiring the special guardian's resignation and that he make and file his final account. That court deemed her mentally competent. Abrahamson and Olmanson both appealed to the district court, where the matter was heard anew. Much testimony was submitted there resulting in findings heretofore stated. The district judge had the opportunity of hearing and seeing all the parties, including appellant, an opportunity the probate court did not have, she being then ill at a hospital. *Page 402 
Upon these findings the court appointed Mr. Abrahamson to be her general guardian and fixed his bond at $30,000. That court also made provision for the payment of counsel fees and expenses incurred.
For our review there are three questions to be determined: (1) Whether the evidence justifies the court's findings of mental incompetency; (2) whether the district court had jurisdiction to appoint a guardian; and (3) whether that court had authority to fix fees of counsel and expenses incurred by those who initiated the present proceedings.
1. These proceedings were had pursuant to L. 1935, c. 72, § 129, 3 Mason Minn. St. 1938 Supp. § 8992-129, which provides:
"The court may appoint one or two persons suitable and competent to discharge the trust as guardians of the person or estate or of both of any person who * * *, because of old age, or imperfection or deterioration of mentality is incompetent to manage his person or estate, * * *"
Appellant's counsel challenge the findings of the court as lacking in sufficient evidence to support them. The issue of her competency was of course the first and principal question to be determined. That the court realized this is apparent from the exhaustive findings made.
With the trial court necessarily rested the primary responsibility of determining fact issues. We are and should be guided by the fact that much must necessarily be left, especially in proceedings of this kind, to the sound judgment and discretion of the trial court. It has the advantage, not possessed here, of being confronted with the witnesses, the alleged incompetent person, and the circumstances surrounding the entire proceeding. It is more capable than we of reaching a clear understanding of the situation and of the mental condition and capacity of the claimed incompetent person. In this connection it is well to bear in mind that the appointment of a guardian of such a person "is not adversary in nature, but rather one by the state in its character of parens patriae, and the manner and method of determining the facts, when jurisdiction has once *Page 403 
vested in the court as required by law, rests in its sound judgment and discretion, controlled of course by the general rules of judicial procedure." Prokosch v. Brust, 128 Minn. 324,327-328, 151 N.W. 130, 132. See also In re Guardianship of Dahmen, 192 Minn. 407, 256 N.W. 891. A careful reading of the entire record leaves no doubt that the findings are well sustained by competent evidence. Able and experienced counsel must know that under such circumstances we as a court of review are bound thereby.
2. The question of whether the district court had jurisdiction to appoint a guardian is a troublesome one. Our constitution (art. 6, § 7) defines the jurisdiction of our probate courts thus: "A probate court shall have jurisdiction over the estates of deceased persons and persons under guardianship, but no other jurisdiction, * * *." As such the constitutional grant is neither common-law nor statutory jurisdiction. State ex rel. Matteson v. Probate Court, 84 Minn. 289,292, 87 N.W. 783. Its powers are plenary, and jurisdiction is to be liberally construed. Harrison v. Harrison, 67 Minn. 520,521, 70 N.W. 802. Its jurisdiction over persons under guardianship is in its origin exclusive. Brandes v. Carpenter,68 Minn. 388, 391, 71 N.W. 402.
"Jurisdiction over persons under guardianship includes not only the appointment of guardians and the control of their official action, but the care and protection of the estates of wards, formerly vested in the court of chancery." Dunnell, Minn. Probate Law, § 27; State v. Ueland, 30 Minn. 277, 282,15 N.W. 245.
The subject matter here which invoked jurisdiction and action on the part of the probate court was primarily that of determining whether Mrs. Strom was in fact incompetent to manage her person, her affairs, or both. Necessarily, before a guardian could be appointed for her, the primary question of competency or lack thereof had to be determined. The probate court found her to be competent. If that determination had not been set aside on appeal no guardian would be needed, nor could one be appointed. So it seems clear that insofar as the appointment of a general guardian is concerned the probate court never reached that issue. What then was to be done *Page 404 
after the case was tried de novo in the district court? Appellant thinks, granting the district court was justified in finding her incompetent, that the case should go back to the probate court for its action in respect to appointment of such guardian.
Our cases hold that on appeal the district court "may render such judgment as the probate court ought to have rendered, but its jurisdiction is appellate, not original, and it exercises probate rather than common-law jurisdiction. It has no greater or different jurisdiction than the probate court had in the premises." Dunnell, Minn. Probate Law, § 70, and cases cited under note 40.
The district court was in duty bound to try the case de novo
and exercise its own discretion and not merely review the exercise of the discretion of the probate court. Washburn v. Van Steenwyk, 32 Minn. 336, 355, 20 N.W. 324. (Other cases bearing on the same subject are found in Dunnell, Minn. Probate Law, § 70, under note 42.)
Appellant does not question the capacity and general qualification of the person named by the district court to be general guardian except that he is a stranger to Mrs. Strom and that as such she will not get from him that personal and affectionate care and attention which a near relative would be likely to bestow. These are matters of the highest importance to be sure. Usually such individuals are preferred to strangers. This point was referred to in Prokosch v. Brust,128 Minn. 324, 328, 151 N.W. 130. In that case both the probate court and the district court on appeal had found Mrs. Prokosch an incompetent person, and a guardian had been appointed by the probate court, that appointment being sustained by the district court. In speaking on the subject this court said (128 Minn. 328,151 N.W. 132):
"While it is true that he [George Prokosch, the son] declined an invitation from petitioners to accept the trust, his refusal appears to have been based on his opposition to the appointment of any guardian. And though no objection appears to the person in fact named to act in this capacity, it is clear that the interests of Mrs. Prokosch will be best served by naming the son, who since the *Page 405 
death of the husband has been the counselor, guide and assistant of his mother in her property affairs. The cause will therefore be remanded without prejudice to an application to substitute the name of the son as guardian."
The obvious distinction between that case and this is that there the probate court had before it for decision, and actually decided, not only the question of competency of Mrs. Prokosch but also the question of who should be her guardian. If here the probate court had reached this issue the question would properly be one for appropriate review on appeal. But it was not; hence we think the case should have been remanded to the probate court for appropriate action, but leaving with it the duty of appointment. (Cf. Turner v. Fryberger, 99 Minn. 236,108 N.W. 1118, 109 N.W. 229.)
There are many things to be considered in cases of this type, particularly when it comes to the appointment of a guardian of the person of an aged and mentally incompetent person. Where, as here, the members of the family are divided into hostile camps it may be doubtful that a selection from either faction can well be made. But we can think of no one better fitted to make such selection than the probate court. In the performance of the difficult duties of guardian of her person the guardian must always remember that his primary duty is to her. Her physical comfort and general welfare in these her declining years should be his controlling objective. To the accomplishment of this purpose we have no doubt the probate court is in full accord and that, acting in that capacity, it will lend its aid and experience to that end. That court is possessed of plenary power in bringing about the best possible result, for by our code (3 Mason Minn. St. 1938 Supp. § 8992-135) "a guardian shall be subject to the control anddirection of the [probate] court at all times and in allthings." (Italics supplied.) See also 5 Dunnell, Minn. Dig. (2 ed. Supps.) § 7771a; In re Guardianship of Dahmen, 192 Minn. 407,410, 256 N.W. 891.
3. There remains for consideration the question of the authority of the district court to allow attorneys' fees and expenses, the same never having been submitted to the probate court. We think this *Page 406 
was error. The system adopted would virtually deprive the probate court of jurisdiction to pass upon a guardian's accounting, a matter obviously committed to it under our code. 3 Mason Minn. St. 1938 Supp. §§ 8992-137 and 8992-139. In point, we think, is Turner v. Fryberger, 99 Minn. 236, 241,108 N.W. 1118, 109 N.W. 229, 230, where the court concluded with this statement:
"The application of the administrator for compensation for himself and attorney and for the allowance of his disbursements must be made to the probate court, and after it has passed upon the matter the district court has the right, upon a proper appeal, to review the action of the probate court."
Thus, and thus only, can full recognition be given to the authority possessed by the probate court. Kelly v. Kelly,72 Minn. 19, 74 N.W. 899, and In re Guardianship of Kaplan,187 Minn. 514, 246 N.W. 5, are not out of harmony with the Harrison case, 67 Minn. 520, 70 N.W. 802, but support it. See also Winjum v. Jesten, 191 Minn. 294, 253 N.W. 881.
What has been said disposes of the essential questions raised on this appeal, and discussion of the other assignments of error need not be had. On the main issue, that of Mrs. Strom's mental incompetency and consequent need of having a guardian appointed for her, the orders appealed from will stand affirmed. On the remaining questions of appointment of a guardian and determination of attorneys' fees and other expenses, the orders will be reversed and the cause remanded for further proceedings in harmony with the views herein expressed.
So ordered.
MR. CHIEF JUSTICE GALLAGHER took no part in the consideration or decision of this case.
MR. JUSTICE HILTON, being incapacitated by illness, took no part. *Page 407