**MINNESOTANS FOR RESPONSIBLE RECREATION, Respondent,**

v.

**DEPARTMENT OF NATURAL RESOURCES, Appellant (CX–02–404) Defendant (C8–02–420) Respondent (C5–02–441),**

**All Terrain Vehicle Association of Minnesota, Defendant (CX–02–404, C8–02–420) Appellant (C5–02–441),**

**Minnesota 4–Wheel Drive Association, Intervenor–Defendant, Appellant (C8–02–420).**

**Nos. CX–02–404, C8–02–420, C5–02–441.**

Court of Appeals of Minnesota.

Oct. 1, 2002.

534

James P. Peters, Karna M. Peters, Peters & Peters, PLC, Glenwood, MN, for respondent.

Mike Hatch, Attorney General, David P. Iverson, Joan Marie Eichhorst, Stephen B. Masten, Assistant Attorneys General, St. Paul, MN, for appellant, Dep't of Natural Resources.

Eric J. Magnuson, Patrick D. Robben, John R. Neve, Rider, Bennett, Egan & Arundel, LLP, Minneapolis, MN, for appellant, All–Terrain Vehicle Ass'n of Minn.

Cory J. Ayling, Douglas J. Franzen, McGrann Shea Anderson Carnival Straughn & Lamb, Chartered, Minneapolis, MN, for appellant Minnesota 4–Wheel Drive Association.

Considered and decided by LANSING, Presiding Judge, RANDALL, Judge, and KLAPHAKE, Judge.

## OPINION

LANSING, Judge.

In a declaratory-relief action, the district court granted summary judgment for Minnesotans for Responsible Recreation (MRR) and ordered the Minnesota Department of Natural Resources (DNR) to complete environmental assessment worksheets (EAWs) on four off-highway vehicle (OHV) system plans developed by the DNR. The DNR and the two intervenors, the All Terrain Vehicle Association of Minnesota (ATVAM) and the Minnesota 4-Wheel Drive Association (M4WDA), argue on appeal that the system plans are not projects as defined by Minn. R. 4410.0200, subp. 65 (2001), and therefore are not subject to environmental review. We conclude that although the system plans themselves are not projects, eight individual trails identified in the affidavits attached to the petitions and discussed in the system plans are definite, site-specific actions that contemplate on-the-ground environmental changes and therefore constitute projects subject to environmental review. We affirm in part and reverse in part.

## FACTS

MRR is a non-profit organization with the declared purpose to "advocate for the restoration, protection, and preservation of peace and quiet and a healthy environment on Minnesota's trails and waterways for future generations." ATVAM is a non-profit corporation with the stated purpose of protecting "its interest in the successful and timely implementation of OHV trail systems." M4WDA is a nonprofit organization that has a stated purpose "to promote responsible, safe, and enjoyable use of 4-wheel drive vehicles." The DNR is the state administrative agency charged with protecting and managing Minnesota's natural resources.

In June 2000, the DNR made available for review by the public four system plans for potential OHV trails in the forests of several Minnesota counties. The four plans were divided into one single and three aggregated county units: (1) Aitkin; (2) Pine and Southern Carlton; (3) Wadena, Southern Cass, and Crow Wing; and (4) Kanabec and Mille Lacs. Each system plan addressed several potential trails, extensions of existing trails, and connections of existing trails for off-road vehicles (ORV), all-terrain vehicles (ATV), and off-highway motorcycles (OHM). More than thirty potential trails, connections, and extensions were identified in the four plans. None of the system plans contained a detailed assessment of the potential environmental impact of developing the trails, extensions, or connections.

The system plans also proposed continuing a DNR-initiated, rule-based forest classification system that had been implemented on an interim basis in 1998 and made permanent in 2000. *See* Minn. R. 6100.1950 (2001). This forest classification system categorized all state forests as managed, limited, or closed, designating the degree to which motorized vehicle use is permitted on state forest roads and trails. Minn. R. 6100.1950, subps. 1, 2.

After the system plans were made available for public review, MRR filed four petitions under Minn.Stat. § 116D.04, subd. 2a(c) (2000) with the Minnesota Environmental Quality Board (EQB), requesting that the DNR complete EAWs for each of the system plans. An EAW is a brief document setting out "the basic facts necessary to determine" if further, more detailed environmental review is re-

quired for a proposed action. Minn.Stat. § 116D.04, subd. 1(c) (2000).

In its petitions, MRR stated that the OHV planning process detailed in the system plans had the potential for significant negative effects to soil, water, and air, and that all four system plans formed part of a "connected action" with numerous other plans for OHV use being developed around the state. MRR attached to its petitions the affidavits of an environmental scientist and a professor emeritus of fisheries and stream ecology at the University of Minnesota, who together identified nine trails, extensions, and connections that posed significant risks of adverse environmental effects. These nine trails and connections are: (1) the connection of the Yellow Birch to the Willard Munger and Gandy Dancer trails; (2) the connection of the Continental Divide trail to the Willard Munger and Gandy Dancer trails; (3) the development of the Chengwatana trail; (4) changes in the permitted use of the Willard Munger trail; (5) the development of the Snake River trail; (6) the development of the Woodland ORV trail; (7) changes in the permitted use of the Moose River trail; (8) the development of the Spider Lake trail; and (9) the development of a loop trail connecting to the Crosby trail.

The EQB designated the DNR as the governmental unit responsible for determining if environmental review was warranted. The DNR issued four records of decision in which it concluded that because the system plans were not yet sufficiently developed to constitute projects as defined by Minnesota rules, no environmental review was required. The DNR stated that the system plans lacked site-level planning and imminent implementation, both of which are prerequisites to effective environmental review. The DNR indicated that it would keep on file for one year the petitions for Pine and Southern Carlton;

Kanabec and Mille Lacs; and Wadena, Southern Cass, and Crow Wing counties and reactivate them in the event that a project is proposed that is identified in, or similar to, the projects identified in the petitions. *See* Minn. R. 4410.1100, subp. 9, .3100, subp. 1(A) (2001). The DNR also concluded that the Spider Lake trail in the Wadena, Southern Cass, and Crow Wing plan was substantially complete and consequently qualified for an exemption from environmental review under Minn.Stat. § 116D.04, subd. 2a(c).

MRR filed complaints in Aitkin, Cass, Crow Wing, Kanabec, and Pine counties challenging the DNR's denial of its petitions for environmental review and seeking declaratory and injunctive relief ordering the DNR to complete EAWs for all four system plans. The Minnesota Supreme Court ordered that the five actions be consolidated and venued in one court; the Cass County district court subsequently granted MRR and the DNR's joint motion for consolidation of the five complaints and venued the action in Cass County district court.

Within six weeks after the consolidation, ATVAM and M4WDA filed notices of intervention and answers in intervention to the consolidated lawsuit.

In August and September 2001, all four parties filed motions for summary judgment. The district court granted MRR's motion for summary judgment and denied the DNR and ATVAM's motions for summary judgment. The district court ordered the DNR to complete EAWs for all four of the system plans. In the memorandum accompanying the order, the district court noted that the affidavits in support of the petitions for environmental review were sufficient to show that the system plans may have the potential for significant environmental effects, that some of the proposed trails identified in

the system plans were capable of implementation by a mere change in designation, and that physical manipulation of the land at any time could lead to implementation of the system plans. The court specifically addressed the Spider Lake project identified in the Wadena, Southern Cass, and Crow Wing plan, noting that although the project was substantially complete within the meaning of Minn. Stat. § 116D.04, subd. 2a(c), environmental review could still influence the remaining implementation or construction and was consequently warranted.

The DNR, ATVAM, and M4WDA all filed notices of appeal, and we have consolidated the cases for purposes of review.

### ISSUES

Are the four DNR OHV system plans "projects" for purposes of the Minnesota Environmental Protection Act and consequently subject to the requirement that an EAW be prepared when at least twenty-five petitioners demonstrate a potential for significant environmental effects because of the nature or location of a project?

### ANALYSIS

On appeal from summary judgment, we determine whether there exist genuine issues of material fact that preclude summary judgment and whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). The interpretation of statutes and rules and the application of statutes and rules to undisputed facts are both questions of law that we review de novo. *Brookfield Trade Ctr., Inc., v. County of Ramsey,* 584 N.W.2d 390, 393 (Minn.1998); *Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 824 (Minn.1977).

Under the Minnesota Environmental Protection Act,

[a]n environmental assessment worksheet shall * * * be prepared for a proposed action whenever material evidence accompanying a petition by not less than 25 individuals, submitted before the proposed project has received final approval by the appropriate governmental units, demonstrates that, because of the nature or location of a proposed action, there may be potential for significant environmental effects.

Minn.Stat. § 116D.04, subd. 2a(c) (2000); Minn. R. 4410.1100, subp. 1 (2001) (referring to the same process). Minnesota rule 4410.0200, subpart 65 (2001), defines "project" as "a governmental action, the results of which would cause physical manipulation of the environment, directly or indirectly."

The rules established by the EQB provide that a petition requesting an EAW must include a description of the project; a description of the potential environmental effects of the project; and material evidence demonstrating that, because of the nature or location of the project, there may be potential for significant environmental effects. Minn. R. 4410.1100, subps. 1, 2 (2001). If the evidence presented by the petitioners demonstrates that the proposed project may have the potential for significant environmental effects, then the responsible governmental unit "shall order the preparation of an EAW." Minn. R. 4410.1100, subp. 6 (2001). The responsible governmental unit's decision to order or to refrain from ordering the preparation of an EAW "may be reviewed by a declaratory judgment action in the district court." Minn.Stat. § 116D.04, subd. 10 (2000); *see also Pope County Mothers v. Minnesota Pollution Control Agency,* 594 N.W.2d 233, 239 (Minn.App.1999) (affirming district court's order requiring MPCA to complete environmental review despite MPCA's decision that environmental review was not necessary).

On appeal, MRR and the DNR, AT-VAM, and M4WDA argue the significance of differing aspects of the definition of "project." MRR argues that the district court was correct when it held that environmental review was required for the four system plans because the implementation of the plans could result in the physical manipulation of the environment. The DNR, ATVAM, and M4WDA, on the other hand, argue that the district court erred in determining that the system plans are "projects" because there has not been sufficient governmental action within the scope of Minn. R. 4410.0200, subp. 65.

█ The district court was asked to resolve these competing contentions by applying statutes and rules that create a somewhat circular definition of "project." The rules define "project" as "a *governmental action*, the results of which would cause physical manipulation of the environment, directly or indirectly" and provide that when determining whether an EAW should be prepared, the reviewing agency must look to "the physical activity to be undertaken and not to the governmental process of approving the project." Minn. R. 4410.0200, subp. 65 (emphasis added). Minnesota statutes define "governmental action" for the purpose of environmental review determinations as "activities, including *projects* wholly or partially conducted, permitted, assisted, financed, regulated, or approved by units of government." Minn.Stat. § 116D.04, subd. 1a(d) (2000) (emphasis added). Despite the circularity, both definitions imply that an "action" or "activity"—something more than just planning—is required before a governmental action or project may be found to exist. *See* Minn.Stat. § 116D.04, subd. 1a(d) (using the term "activities"); Minn. R. 4410.0200, subp. 65 (mandating that reviewing agency look to "activity" to be undertaken). Consistent with this approach, the rule governing the contents of the petition requesting environmental review requires site-specific information, including the nature and location of the project. Minn. R. 4410.1100, subps. 1, 2.

The decisions of the federal courts, addressing ripeness and standing issues in challenges to federal environmental policies and plans, provide some guidance on what constitutes a project that is sufficiently advanced to be subject to environmental review. The United States Supreme Court, in holding that the action brought by environmental groups challenging a land resource management plan for a national forest was not yet ripe for judicial review, emphasized that "site-specific action" or "site-specific proposals" are prerequisites to judicial review. *Ohio Forestry Ass'n v. Sierra Club,* 523 U.S. 726, 735, 118 S.Ct. 1665, 1671, 140 L.Ed.2d 921 (1998). The court cautioned that review was only proper when "the consequences had been 'reduced to more manageable proportions' and where the 'factual components [were] fleshed out, by some concrete action.'" *Id.* at 736–37, 118 S.Ct. at 1672 (quotation and citation omitted). The court noted that further factual development would significantly advance its ability to deal with the legal issues presented. *Id.*

The Eighth Circuit has also provided guidance about when review of a forest plan is appropriate, noting that the plan must dictate a "particular site-specific action causing environmental injury" and must "effectuate on-the-ground environmental changes" before judicial review is appropriate. *Sierra Club v. Robertson,* 28 F.3d 753, 758 (8th Cir.1994) (holding that environmental groups did not show any current injury and therefore lacked standing to challenge a land and resource management plan for a national forest); *see also Wyo. Outdoor Council v. United*

*States Forest Serv.*, 165 F.3d 43, 48–49 (C.A.D.C.1999) (noting that because there was not an "irreversible and irretrievable commitment of resources," environmental organization's challenge to the procedure for allocating oil and gas leases in forest was not ripe for judicial review).

■ Relying on the applicable language of Minnesota rules and statutes and the instructive analysis of related issues in federal court decisions, we hold that a "project" for purposes of the Minnesota Environmental Protection Act is a definite, site-specific, action that contemplates on-the-ground environmental changes, including changes in the nature of the use. Applying this definition, we conclude that the four system plans themselves are not projects that require environmental review. The system plans describe the proposal process, provide an assessment of the level of OHV use in the counties, describe current OHV system policies and procedures, recommend educational and enforcement procedures, and propose potential trail sites. But the system plans as a whole are not definite, site-specific actions and do not effectuate on-the-ground environmental changes or changes in the nature of the use. The system plans, rather, demonstrate "the governmental process of approving the project[s]." Minn. R. 4410.0200, subp. 65. Before the plans themselves are implemented, they must be approved by the Commissioner of the Department of Natural Resources. Even after this approval, many of the proposed trail sites will never be developed because of lack of funding, personnel, or feasibility. The system plans are too broad and speculative to provide the basis for meaningful environmental review.

Nevertheless, our analysis does not end here. Although the system plans themselves are not sufficiently definite to require environmental review, several of the trails identified in the system plans satisfy the definition of a project and consequently require the preparation of an EAW. The affidavits accompanying the petitions requesting the preparation of EAWs identify nine trails and connections that pose danger to the surrounding environment. We conclude that eight of these nine trails and connections are projects, and that the DNR must complete EAWs for these eight trails and connections.

■ In the Pine and Southern Carlton plan, both the Yellow Birch connection to the Willard Munger and Gandy Dancer trails and the Continental Divide connection to the Willard Munger and Gandy Dancer trails are sufficiently definite to allow for environmental review. Both of these trails currently exist, but the DNR proposes to construct 4.5 miles of new trail to connect these two trails to the two longer trails and to form loops. This proposed construction is a definite, site-specific action that contemplates an on-the-ground environmental change.

■ Also in the Pine and Southern Carlton plan, the proposed development of the Chengwatana trail and the proposed changes in the Willard Munger state trail are sufficiently definite to require environmental review. The change in the Willard Munger trail would allow ATV and OHM use in an area where it is currently prohibited, which would in turn introduce OHV-generated pollutants into the area. If this proposed change is implemented, then the DNR plans to develop the Chengwatana trail, which will constitute loop access trails connecting to the Willard Munger trail. Again, these two proposals demonstrate a definite, site-specific action, as well as proposing a physical change in the environment and a change in use.

■ Similarly, in the Wadena, Southern Cass, and Crow Wing System Plan, the

proposed change in the Moose River trail to allow OHM use, and the proposed development of a loop ORV trail system on abandoned railroad trails and trust fund lands to create a longer Crosby trail, are sufficiently definite and represent on-the-ground environmental changes that require the preparation of EAWs.

 In the Kanabec and Mille Lacs plan, the Woodland ORV site currently has two miles of undesignated trails and 300 to 400 acres of land for trail development. The DNR rated this site the most suitable for development and has immediate plans to develop it. This proposal is site-specific and contemplates the on-the-ground environmental changes that warrant environmental review. The affidavits attached to the petitions also identified the Snake River trail, referred to in the affidavits as the "loop site," but this project will only be developed in the event that four other, more suitable trail sites are not developed. Although it is site-specific and envisions an on-the-ground environmental change, the development of this trail has not yet been proposed and, thus, is not sufficiently definite to require an EAW.

The final trail is the Spider Lake project identified in the Wadena, Southern Cass, and Crow Wing plan. In its record of decision, the DNR claimed that the Spider Lake project was substantially complete and therefore exempt from environmental review. *See* Minn. R. 4410.4600, subp. 2(D) (2001) (noting that a project is exempt from environmental review if a "substantial portion of the project is complete and [environmental review] would not influence remaining implementation or construction"). The district court required the DNR to complete an EAW for the Spider Lake project because environmental review may still "influence remaining implementation or construction." *Id.* On appeal, the DNR does not challenge the

district court's decision to require an EAW for Spider Lake, and the record demonstrates that the DNR intends to begin the EAW process for this project. Some of the parties continued to challenge the district court's Spider Lake determination in their briefs, but the DNR's decision to proceed on the EAW renders this issue moot. Nothing in the record suggests that the DNR will abandon its intent to complete an EAW for this project.

We also note that additional trails identified in all four system plans may meet the definition of project and therefore warrant environmental review, but the affidavits and petitions fail to identify the specific location of these projects and to describe in detail the potential environmental effects. *See* Minn. R. 4410.1100, subps. 1, 2 (setting out facts that must be identified in the petition requesting the preparation of EAWs). Because the current petitions and accompanying affidavits do not specifically identify or describe any potential environmental effects, we cannot determine whether an EAW is required.

 Finally, we address MRR's argument that the system plans are part of a connected or phased action. Under the applicable rules, "multiple projects and multiple stages of a single project that are connected actions or phased actions must be considered in total when determining the need for an EAW * * * [and] preparing the EAW." Minn. R. 4410.1000, subp. 4 (2001). "Two projects are 'connected actions' if * * * they are related in any of the following ways: A. one project would directly induce the other; B. one project is a prerequisite for the other; or C. neither project is justified by itself." Minn. R. 4410.0200, subp. 9b (2001). The system plans do not constitute a connected or phased action requiring environmental review because the system plans themselves are not projects. Furthermore, the record

lacks sufficient development to permit us to determine the degree of interrelatedness of the system plans or the individual trails. Although several of the proposals are apparently connections between two or more existing trails, the simple fact that the trails connect is not sufficient to demonstrate that they constitute "connected actions" within the definition of the applicable rule.

### DECISION

The four system plans developed by the DNR are not projects within the meaning of the Minnesota Environmental Protection Act for purpose of requiring an EAW. The eight trails specifically identified in the affidavits accompanying the MRR petitions are, however, definite, site-specific actions that contemplate on-the-ground environmental changes including changes in the nature of the existing use. These trails, therefore, constitute projects for which an EAW is required.

**Affirmed in part and reversed in part.**