In re CONSERVATORSHIP OF
Mary Larkin SMITH.

No. C9–02–667.

Court of Appeals of Minnesota.

Jan. 21, 2003.

Martin V. Aydelott, Denis E. Grande, Mackall, Crounse & Moore, P.L.C., Minneapolis, for appellant Mary Larkin Smith.

Mary R. Vasaly, Kai H. Richter, Maslon, Edelman, Borman & Brand, Minneapolis, for respondent Mary Riley.

James Crist, Steinhagen & Crist, Minneapolis, for respondent Mary McKendrick.

Considered and decided by G. BARRY ANDERSON, Presiding Judge, STONEBURNER, Judge, and WRIGHT, Judge.

## OPINION

WRIGHT, Judge.

On appeal from a judgment in a conservatorship proceeding, appellant argues that the district court's order appointing a conservator should be reversed, or, in the alternative, that a new trial should be granted, because the district court (1) erred by applying the Minnesota Rules of Civil Procedure and permitting pretrial discovery and (2) abused its discretion by excluding appellant's witnesses from testifying as a sanction for untimely disclosing their identity. We affirm.

## FACTS

Appellant-conservatee Mary Larkin Smith (conservatee), who was 89 years old when this action commenced, had experienced a gradual decline in cognitive abilities for approximately ten years. Diagnosed with Alzheimer's disease, conservatee resided in her home with 24–hour care.

Conservatee has two adult children, Mary Elizabeth Riley (Riley) and Bill Smith (Smith). Riley and Smith have an acrimonious sibling relationship and disagree on matters regarding conservatee. In her health-care directive prepared in November 1999, conservatee nominated her treating physician, Dr. David B. Plimpton, to be her ·health-care agent because naming one of her children was "not a workable option."

Since 1999, Smith has been actively involved in overseeing conservatee's health and living arrangements. With respect to conservatee's health, he maintained that she possessed "full mental capacity." From January through April 2000, Smith repeatedly prevented conservatee from attending appointments with a neurologist to evaluate her deteriorating cognitive status. When conservatee was hospitalized in July 2000, Smith had her discharged against medical advice. After advising conservatee's doctors that he wanted to discontinue all of her medication, Smith refused to give conservatee medication in direct contravention of her prescribed medical regimen. He opposed 24–hour care for conservatee at her home and prevented family members from participating with conservatee in making medical decisions.

At the same time, Smith became actively involved in conservatee's financial affairs. He hired an attorney in April 2000 to make changes to conservatee's will, trust agreement, and health-care directive. As a result, Smith obtained power of attorney over conservatee's affairs. After firing Dr. Plimpton, Smith also became conservatee's health-care agent and conservator, should the need ever arise.

Concerned about conservatee's health and the state of her assets, Riley filed a petition for the appointment of an independent, non-family conservator on January 19, 2001. The parties agreed on a schedule, which the district court incorporated in its scheduling order, directing the discovery process and setting a deadline for witness disclosure. Riley served conservatee with interrogatories and a request to identify conservatee's witnesses. Conservatee objected to the discovery process by filing a number of motions with the district court. Conservatee specifically argued that, because she was not a defendant in a lawsuit, the civil discovery rules were inapplicable to her. The district court rejected conservatee's argument, and, on December 13, 2001, issued an order compelling discovery. Well after the original court-ordered deadline and two weeks before the hearing, conservatee served responses to the written discovery requests and identified eight witnesses for the hearing.

On the third day of the hearing, conservatee filed her formal witness list. The list included three witnesses not previously disclosed by conservatee during discovery. Conservatee stated that, because the period between the district court's discovery order and the discovery deadline was so short, she inadvertently omitted the three witnesses from the list. The newly identified witnesses were both conservatee's former and current estate attorneys and her corporate trustee, who were expected to testify regarding conservatee's mental capacity at the time she executed amendments to her will and trust agreements in April 2000. Riley objected to the testimony of the previously undisclosed witnesses. The district court sustained the objection and allowed conservatee to call only those eight witnesses who were identified in her

discovery responses. Consequently, testimony from conservatee's estate attorneys and corporate trustee was not permitted.

Following the four-day hearing, the district court concluded that conservatee was incapacitated and in need of a conservator under Minn.Stat. § 525.54 (2000). After making extensive factual findings, the district court determined that it would not be in conservatee's best interests for Smith to serve as her conservator because his fiscal irresponsibility exposed conservatee's estate to possible mismanagement and because he failed to show a commitment to conservatee's welfare. Accordingly, the district court granted Riley's petition and appointed an independent, non-family conservator of conservatee's person and estate.

On March 14, 2002, conservatee filed a motion to dismiss Riley's petition, or, in the alternative, for a new trial, arguing that the exclusion of conservatee's witnesses at trial was erroneous and prejudicial. The district court denied the motion. This appeal followed.

## ISSUES

I. Are conservatorship proceedings under Minn.Stat. §§ 525.539–.6199 (2000) governed by the Minnesota Rules of Civil Procedure?

II. Did the district court abuse its discretion by excluding conservatee's witnesses from testifying when (a) the identity of the witnesses was not revealed by the conservatee until the third day of trial, in violation of the district court's order compelling disclosure and of the applicable rules of civil procedure and (b) when the excluded testimony was irrelevant?

## ANALYSIS

### I.

■ The district court's conclusions of law, including the interpretation of statutes and rules, are reviewed de novo. *Minnesotans for Responsible Recreation v. Dep't of Natural Res.*, 651 N.W.2d 533, 538 (Minn.App.2002). Conservatee challenges the district court's application of the Minnesota Rules of Civil Procedure to this conservatorship proceeding. Conservatee argues that the rules of civil procedure do not apply to a conservatorship because they govern suits of a civil nature, not conservatorship proceedings, which are nonadversarial. To prevail, conservatee's argument requires us to determine at the outset whether a conservatorship proceeding is a civil action.

■ Rule 2 establishes that there is one form of action known as a "civil action." Minn. R. Civ. P. 2. A civil action "includes every proceeding before a competent court in the due course of proper administration of justice that is to result in any determination." *Leek v. Am. Express Prop. Cas.*, 591 N.W.2d 507, 510 (Minn. App.1999) (citation omitted), *review denied* (Minn. July 7, 1999). Contrary to conservatee's argument, the definition of a civil action does not exclude proceedings that are not adversarial. A conservatorship proceeding is a proceeding under chapter 525, seeking a determination by the district court of the capacity of the proposed conservatee to care for himself or herself. *See* Minn.Stat. §§ 525.539, subds. 3, 5, .54, subds. 1–3 (2000). Thus, applying the definition articulated in *Leek*, a conservatorship proceeding is a civil action.

The Minnesota Rules of Civil Procedure

govern the procedure in the district courts of the State of Minnesota in all suits of a civil nature, with the exceptions stated in Rule 81.

Minn. R. Civ. P. 1. Rule 81.01 identifies, through Appendix A, a nonexclusive list of

statutory actions to which the rules are not applicable. *See Peterson v. Peterson*, 308 Minn. 297, 304 n. 3, 242 N.W.2d 88, 93 n. 3 (1976) (stating Appendix A is "of course, not exclusive"). Conservatorship proceedings are not listed in Appendix A as one of the proceedings not governed by the rules of civil procedure.

Conservatorship proceedings are governed by the probate-practice provisions of chapters 524 and 525 of Minnesota Statutes. By statute, absent an inconsistency with the provisions of these chapters, probate proceedings are "governed insofar as practicable by the rules of civil procedure." Minn.Stat. § 524.1–304 (2000).

 A statute governing a civil proceeding that provides that the proceeding shall be conducted in the same manner as in a civil action or uses other language of similar import adopts the rules of civil procedure by reference, unless there is a specific provision in the statute itself that is inconsistent with the rules. *Nationwide Corp. v. N.W. Nat'l Life Ins. Co.*, 251 Minn. 255, 266, 87 N.W.2d 671, 680 (1958) (citing *In re Estate of Iofredo*, 241 Minn. 335, 63 N.W.2d 19 (1954)). Such is the case with Minn.Stat. §§ 524.1–304, the statute governing conservatorship proceedings. Section 525.551, subdivisions 1–7 (2000), outlines the rules for a conservatorship hearing, such as attendance, notice, and the conservatee's right to summon and cross-examine witnesses. But it is silent as to pretrial discovery. Neither this provision nor any other in chapters 524 and 525 involved here specifically excludes any part of the conservatorship process from the rules of civil procedure. Similarly, the statutory probate provisions relevant to this action, including those relating to conservatorships, are not inconsistent with civil discovery rules. A conservatorship proceeding, which is an action of a civil nature, therefore, is governed by the Minnesota Rules of Civil Procedure.

Conservatee relies on the Minnesota Supreme Court's decision in *In re Prokosch's Guardianship*, 128 Minn. 324, 151 N.W. 130 (1915), to argue that the nonadversarial nature of conservatorship proceedings exempts them from the rules of civil procedure. The supreme court observed in *Prokosch* that the appointment of a guardian [1] for an allegedly incompetent person, arising from the state's "character of *parens patriae*," was a special proceeding authorized by statute that was not adversarial in nature. *Id.* at 327, 151 N.W. at 132 (emphasis original). Based on this observation, conservatee contends that, because the conservatorship proceeding is not an adversarial proceeding, she had no obligation to follow the rules of discovery found in rules 26–37 of the Minnesota Rules of Civil Procedure. But *Prokosch* does not support conservatee's claimed immunity from discovery.

As an initial matter, the guardianship action in *Prokosch* took place in 1915, well before the adoption of the Minnesota

---

1. For our analysis, conservatorship and guardianship proceedings are not distinguishable. Under the statutory scheme, the powers and duties of the guardian and conservator establish the difference between guardianship and conservatorship. *See* 6 Steven J. Kirsch, *Minnesota Practice* § 37.6 (1990). A guardian is granted *all* of the powers enumerated in Minn.Stat. § 525.56, subds. 3, 4 (including establishing a place of abode, providing for care, comfort, and maintenance needs, and making medical decisions). Minn.Stat. § 525.551, subd. 5 (2002). A conservator is granted *fewer than all* of the powers enumerated in section 525.56, subdivisions 3, 4. *Id.* The legal status of the incapacitated person also differs based on the nature of the appointment. "Appointment of a guardian is evidence of the incompetency of the incapacitated person. Appointment of a conservator is not evidence of incompetency." Minn.Stat. § 525.54, subd. 5 (2002).

Rules of Civil Procedure in 1952.[2] The holding in *Prokosch,* therefore, cannot stand for the proposition that the current rules of civil procedure do not apply to conservatorship proceedings. *See Skelly Oil Co. v. Comm'n of Taxation,* 269 Minn. 351, 371, 131 N.W.2d 632, 645 (1964) (stating " '[a]lways the language used in an opinion must be read in the light of the issues presented' ") (quoting *Sinclair v. United States,* 279 U.S. 749, 767, 49 S.Ct. 471, 477, 73 L.Ed. 938 (1929)). Second, and most importantly, the *Prokosch* court did not exclude guardianship proceedings from the existing rules of procedure. *Id.* at 328, 151 N.W. at 132. On the contrary, the court specifically stated that the manner and method of determining the facts in a guardianship proceeding should rest in the sound judgment and discretion of the court, *"controlled of course by the general rules of judicial procedure." Id.* (emphasis added).[3] Consistent with its pronouncement, the supreme court held that cross-examination of an allegedly incompetent party was necessary for the determination of the main issue in the case—the mental condition and capacity of Mrs. Prokosch to manage her affairs. *Id.* at 327–28, 151 N.W. at 132. The general rules of

judicial procedure referred to in *Prokosh* were the predecessors to the Minnesota Rules of Civil Procedure. *See supra* notes 2 & 3. *Prokosch's* acknowledgement of the nonadversarial nature of guardianship proceedings does not exempt them from governance by procedural rules designed to ensure the orderly resolution of issues before the court. *Prokosch,* 128 Minn. at 327–28, 151 N.W. at 132; *In re Strom's Guardianship,* 205 Minn. 399, 402–03, 286 N.W. 245, 247 (1939).

In this case, an inquiry into the state of conservatee's health, her cognitive ability, and Smith's management of her affairs was crucial to the district court's determination of whether continued appointment of Smith as conservator was in the best interests of conservatee. *See* Minn.Stat. § 525.61, subd. 3 (2000) (when considering removal of conservator, district court must determine whether continued appointment of conservator is in best interests of conservatee). By filing her petition to remove Smith and appoint an independent conservator, Riley had the burden of proving, by clear and convincing evidence, the facts alleged in the petition. Minn.Stat. § 525.551, subd. 3 (2000). Adherence to the rules of civil procedure enables all

---

**2.** Beginning in 1858, Minnesota civil proceedings were based on statutory procedures patterned upon New York's Field Code. *See* 1 David F. Herr & Roger S. Haydock, *Minnesota Practice,* Preface (2000). In 1915, rules governing civil actions, witnesses, and evidence were promulgated in chapters 77 and 92 of the General Statutes of Minnesota (1913). The adoption of the Federal Rules of Civil Procedure in 1938 initiated a civil-procedure movement among the states. The Minnesota legislature in 1947 enacted chapter 498 of the Minnesota Statutes, which authorized the Minnesota Supreme Court to create and adopt its own procedural rules. The Minnesota Rules of Civil Procedure were adopted by the Minnesota Supreme Court in 1952 and have since been amended periodically. Adoption of the rules initiated the transition from code practice to rule practice in

Minnesota. *See* 1 Herr & Haydock, *supra,* Preface (2000).

**3.** At that time, separate probate courts with powers similar to those of the district courts, with respect to witness examination, court decorum, issuing commissions to take depositions, and making orders, had jurisdiction over the appointment of a guardian for an incompetent person. Minn. Gen.Stat. §§ 7433, 7211 (1913). Instead of separate rules of practice for probate courts, probate proceedings were governed by the general rules applicable to district courts, which were outlined in chapters 77 and 92 of the 1913 Minnesota General Statutes, which set forth the rules for civil actions, witnesses, and evidence.

parties to conduct discovery, thereby allowing for an orderly, expeditious, and effective means of developing the record for the district court's determination of the best interests of conservatee.

■■ In reaching our holding that conservatorship proceedings are governed by the Minnesota Rules of Civil Procedure, we reiterate the *Prokosch* court's sensitivity to the potential for abuse in conservatorship and guardianship actions. The primary purpose of conservatorship proceedings is not to resolve a controversy between parties but to protect "that class of citizens who are incapable of fully protecting themselves." *Prokosch*, 128 Minn. at 327, 151 N.W. at 132. As in this case, district courts must examine the private affairs of proposed conservatees and their families. Because conservatorship proceedings may be extremely intrusive for the proposed conservatee and against his or her wishes, the district court's exercise of its sound judgment and broad discretion is warranted in appropriately monitoring the discovery process on a case-by-case basis to safeguard against the proposed conservatee becoming the victim of endless litigation, an overwhelming discovery process, and bitter family·feuds.

## II.

■ We next review the district court's decision to exclude three of conservatee's witnesses because she failed to disclose their identities before commencement of the hearing. Generally, the district court has the duty to supervise and control trials conducted before it. *Jensen v. Dikel*, 244 Minn. 71, 80, 69 N.W.2d 108, 115 (1955); *cf. In re Strom*, 286 N.W. at 247 ("We are and should be guided by the fact that much must be left, especially in [guardianship proceedings], to the sound judgment and discretion of the trial court. It has the advantage, not possessed here,

of being confronted with the witnesses, the alleged incompetent person, and the circumstances surrounding the entire proceedings."). The question of whether to admit or exclude evidence is within the district court's discretion. *Kroning v. State Farm Auto. Ins. Co.*, 567 N.W.2d 42, 45–46 (Minn.1997). We view the record in the light most favorable to the district court's ruling. *Kielsa v. St. John's Lutheran Hosp. Ass'n*, 287 Minn. 187, 192, 177 N.W.2d 420, 423 (1970). The burden of showing that the district court abused its discretion lies with conservatee. *Id.* at 193, 177 N.W.2d at 424. A party is not entitled to a new trial unless an erroneous evidentiary ruling resulted in prejudicial error. *Kroning*, 567 N.W.2d at 46. Thus, our analysis turns on whether the district court's exclusion of testimony about conservatee's mental state when she signed various estate documents resulted in prejudicial error.

■ In this conservatorship proceeding, the issue before the district court was whether Smith's continued appointment as conservator was in the best interests of conservatee. Minn.Stat. § 525.61, subd. 3. Conservatee's proposed three witnesses, both conservatee's former and current estate attorneys and her corporate trustee, were expected to testify regarding conservatee's competence and demeanor when she executed the estate documents. But whether conservatee was competent to sign these documents in April 2000 was not the issue before the district court. Rather, the issue was whether removal of Smith as conservator in 2001 was in conservatee's best interests. The proposed testimony was not probative of the controverted issue; thus, it was irrelevant and inadmissible. *See* Minn. R. Evid. 401 (defining 'relevant evidence' as tending to make existence of a fact of consequence to the determination more or less probable),

402 (evidence that is not relevant is not admissible). The district court did not err.

During the course of the four-day hearing, the district court received testimony from 16 witnesses and numerous exhibits. Based on this evidence, the district court made extensive findings with respect to Smith's management of conservatee's health and assets. These findings clearly demonstrate that Smith failed to act in conservatee's best interests when he fired her physician, cancelled numerous appointments to evaluate her health and cognitive condition, refused to dispense her medication, fired most of her caregivers and hired new ones, and restricted conservatee's interaction with her family. The testimony of conservatee's estate counsel and corporate trustee as proffered was not relevant to the determination of whether Smith was managing conservatee's health and assets in her best interests.

Exclusion of witnesses arguably is a harsh penalty for conservatee's failure to adhere to the stipulated discovery process, the district court's scheduling order, and its subsequent order compelling discovery and witness disclosure. There may have been other available sanctions, such as a continuance to permit preparation for the previously undisclosed witnesses. But the availability of other sanctions does not render the exclusion of testimony an abuse of discretion. We conclude that the district court did not abuse its discretion in excluding the three witnesses. Absent an abuse of discretion, we will not substitute our judgment for that of the district court. *Arundel v. Arundel,* 281 N.W.2d 663, 667 (Minn.1979). And in light of the proffered testimony of the witnesses, no error or prejudice resulted from their exclusion.

## DECISION

The district court did not err in applying the discovery rules of the Minnesota Rules of Civil Procedure to the conservatorship proceeding. The conservatorship statute, Minn.Stat. §§ 525.539–.6199 (2000), does not establish a discovery procedure; therefore, application of the Minnesota Rules of Civil Procedure was not inconsistent with the conservatorship statutory provisions. The district court did not abuse its discretion by excluding conservatee's witnesses.

**Affirmed.**